265 So.2d 284 (1972)
Joseph TILLMAN, Jr.
v.
The NEW ORLEANS SAINTS FOOTBALL CLUB and New Orleans Saints, Inc.
No. 5021.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1972.
Dodge & Friend, Joseph E. Friend, New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Albert H. Hanemann, Jr., New Orleans, for defendant-appellee.
Before REGAN, SAMUEL and GULOTTA, JJ.
GULOTTA, Judge.
This appeal is from a judgment dismissing plaintiff's claim for $7,499.99 allegedly due on a written contract entered into between plaintiff and defendant on June 14, 1967. This was a National Football League Standard Player's Contract. Under its terms, the defendant was to pay *285 plaintiff, a football player, $12,000 for the 1967 football season, subject, however, to right of prior termination by the Saints as specified therein upon the giving of written notice to plaintiff.[1]
During practice drill, before the commencement of the regular season, Tillman suffered a torn ligament of the knee.
Plaintiff was waived by the Saints on November 1, 1967, was paid $4,500.01, and his salary was terminated. On April 23, 1969, he filed this action for unpaid wages alleging that under the contract the Saints had no right to waive him, because he was injured at the time.[2]
Exceptions of one-year prescription, based on LSA-C.C. art. 3534, were overruled. However, judgment was granted in favor of defendant based on the trial judge's determination that plaintiff was physically able to return to full play at the time of waiver and termination of the contract.
The questions before us are (1) whether plaintiff's action has prescribed under the one-year provision of Article 3534, and (2) whether plaintiff was physically able to perform his services under the contract at the time it was terminated on November 1, 1967.
Insofar as defendant's exception of prescription is concerned, we are of the opinion, as was the trial judge, that the one-year prescriptive period of LSA-C.C. art. 3534[3] is inapplicable. Defendant argues that the word "servant" in Article 3534 means servant in the broadest sense, i. e., whenever the master-servant relationship exists. Were we to accept this, there would be no need in our Code to set out other prescriptive periods for wages of *286 particular kinds of employees as they would all be "servants" in the broad sense. Furthermore, if it were intended by the redactors of the Code that the word "servants", as used in this Article, encompassed every situation when the master-servant relation existed, the Article would clearly have stated it. Aubry & Rau, Civil Law Translations, Volume 5, page 368, paragraph 723, discusses Article 2272 of the 1804 Code which was the origin of the present Article 3534:
"Finally, Art. 2272 envisages servants. This term includes all those persons who are, for salary, attached to the person of their master and to the service of his house. Such are: cooks, doorkeepers, valets, chauffeurs [orig.: coachmen]. Not included in this category are: clerks, house stewards, tutors, librarians, secretaries. They are all subject to the five-year prescription, if paid by the year or by shorter periods (Art. 2277); if their salary is in the form of a lump sum, the prescription is by thirty years.
"Art. 2272 envisages only domestic help hired by the year. It seems to us that it should be extended to those hired by the month, but not by a shorter period." (emphasis ours)
It is our opinion, therefore, that the use of the word "servants" in Article 3534 does not apply to persons who are employed under salaried contracts as Tillman was. See also: Coote v. Cotton, 5 La. 12 (1832).
The Civil Code does not expressly provide a prescriptive period in the situation of a professional athlete; however, the action is a personal one based on a written agreement. Accordingly, the ten-year prescriptive period of LSA-C.C. art. 3544 applies[4] to plaintiff's action which has, thus, not prescribed.
Turning now to the question of whether plaintiff was physically able to play at the time his contract was terminated, the record reflects the team physician, Dr. Kenneth Saer, performed an operation on July 10, 1967, to repair the injury. Plaintiff's leg was placed in and remained in a cast until August 3, 1967.
Tillman was instructed to return to the Saints' training camp to begin regaining muscle strength through exercise by weightlifting and bicycle riding. The doctor testified that at this time plaintiff "was doing quite well, his wound was well-healed * * *". It was on October 24, 1967, that Dr. Saer felt plaintiff was able to return to full play. His testimony was:
"* * * I would say on October 24th if this were a person playing football, if this was one of the players playing he had a position to play they would play. The average football player would play before that time."
In response to the question whether plaintiff was physically capable of playing professional football insofar as his right knee (the injured knee) was concerned, the doctor responded:
"I thought he was. Again, I thought he was on October 24th. * * *"
Dr. Saer submitted a report dated April 13, 1971, in which he stated that plaintiff did have some "residual disability and early degenerative arthritic changes in the knee joint." However, we note that he further stated:
"* * * Such changes are very commonly seen in the professional football player as a result of injuries in college or professional leagues. A large majority of professional football players with similar injuries and similar relatively mild disability would continue to play with this residual disability." (emphasis ours) *287 The only other physician who saw plaintiff was Dr. Harold G. Hutson, an orthopedic surgeon in Little Rock, Arkansas. Two reports of Dr. Hutson dated November 22, 1967, and April 3, 1968, were stipulated in evidence. In the latter report, Dr. Hutson stated in regard to his examination of plaintiff on November 21, 1967:
"* * * It was my impression at that time that this patient was not ready to return to full duty as a professional football player. * * *"
However, Dr. Hutson erroneously concluded in his report that plaintiff "had a repair of the medial collateral ligament and the anterior cruciate ligament."[5] Dr. Saer indicated, to the contrary, there was no damage to the cuciate ligament but only to the medial collateral ligament and that tears to both ligaments, which was the mistaken impression of Dr. Hutson, would have been considerably worse. With this in mind, we cannot give much weight to Dr. Hutson's conclusion that plaintiff was unable to play football.
The trial judge accepted the opinion of the club physician and concluded plaintiff was physically able to play professional football at the time the contract was terminated. We find no error in this conclusion.
Plaintiff seeks to invoke the provisions of Paragraph 15 of the agreement, which provides:
"* * * Player may, within seventy-two hours after his examination by the Club Physician, submit at his own expense to an examination by a physician of his choice. If the opinion of such physician with respect to Player's physical ability to render the services required of him by this contract is contrary to that of the Club Physician, the dispute shall be submitted to a disinterested physician to be selected by the Club Physician and Player's Physician or, if they are unable to agree, by the Commissioner of the National Football League, and the opinion of such disinterested physician shall be conclusive and binding upon the Player and the Club. * * *"
However, because we have concluded that the opinion of Dr. Hutson was based upon a mistaken impression as to the extent of the injury and have accorded little weight to his evaluation, we find no basis for the application of this provision requiring the dispute to be submitted to a third, disinterested physician. The medical testimony of Dr. Hutson does not satisfy us that there is indeed a dispute. Furthermore, plaintiff failed to comply with the provisions of Paragraph 15 of the agreement which require that an examination is to be had by the player within 72 hours from that by the club physician.[6]
Finally, we find no merit to plaintiff's contention that because defendant failed to notify him in writing of his termination as required by the contract,[7] there was in effect no notice given, and, therefore, the contract was not terminated. It is uncontroverted that Tillman had actual knowledge on November 1, 1967, that he was waived. Counsel for plaintiff stipulated as of that date, the Saints had communicated this fact; furthermore, Tillman alleged in his original petition that he was notified by defendant of the termination of his contract. When Tillman left the Saints' camp in November, 1967, his actions indicated he had knowledge of his release. Moreover, the record is clear that by plaintiff's admissions and acquiescence *288 to the notice, he waived his contractual right to a letter of termination.
Written notice would have been superfluous in this instance and mere ceremony. The law will not require a vain and useless thing. See: Voss v. Roach, 35 So.2d 142, 143 (La.App. 2nd Cir.1948).
Accordingly, the judgment of the trial court is affirmed.
Affirmed.
NOTES
[1] Paragraph 6 of the contract reads:

"The Player represents and warrants that he is and will continue to be sufficiently highly skilled in all types of football team play, to play professional football of the caliber required by the League and by the Club, and that he is and will continue to be in excellent physical condition, and agrees to perform his services hereunder to the complete satisfaction of the Club and its Head Coach. If in the opinion of the Head Coach the Player does not maintain himself in excellent physical condition or fails at any time during the football seasons included in the term of this contract to demonstrate sufficient skill and capacity to play professional football of the caliber required by the League and by the Club, or if in the opinion of the Head Coach the Player's work or conduct in the performance of this contract is unsatisfactory as compared with the work and conduct of other members of the Club's squad of players, the Club shall have the right to terminate this contract upon written notice to the Player of such termination."
[2] The appropriate portion of the contract under Paragraph 15. INJURIES reads:

"If a player is injured in the performance of his services under this contract, this contract shall remain in full force and effect despite the fact that such player, following injury, is either carried by the club on its Reserve List or is waived out as an injured player while injured; when such player is again physically able to perform his services under this contract, the club shall have the right to activate such player, and player shall be obligated to perform his services hereunder in accordance with the terms hereof."
[3] LSA-C.C. art. 3534 reads:

"The following actions are prescribed by one year:
"That of justices of the peace and notaries, and persons performing their duties, as well as that of constables, for the fees and emoluments which are due to them in their official capacity.
"That of masters and instructors in the arts and sciences, for lessons which they give by the month.
"That of innkeepers and such others, on account of lodging and board which they furnish.
"That of retailers of liquors, who sell ardent spirits in less quantities than one quart.
"That of workmen, laborers and servants, for the payment of their wages.
"That for the payment of the freight of ships and other vessels, the wages of the officers, sailors and others of the crew.
"That for the supply of wood and other things necessary for the construction, equipment and provisioning of ships and other vessels." (emphasis ours)
[4] LSA-C.C. art. 3544 states:

"In general, all personal actions, except those before enumerated, are prescribed by ten years."
[5] Dr. Hutson's November 22, 1967, report contained this inaccuracy, indicating that he was under the impression plaintiff had suffered two torn ligaments.
[6] Plaintiff was certified by the team physician on October 24, 1967, that he was able to return to play. He was examined by Dr. Hutson on November 21, 1967.
[7] See Paragraph 6 of contract, quoted in footnote 1.