292 So.2d 767 (1974)
Mrs. J. B. TORANTO
v.
MORTON'S AUCTION EXCHANGE, INC.
No. 6128.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
*768 Rudolph R. Schoemann, New Orleans, for defendant-appellant.
Richard K. Dimitry, Stephen C. Hartel, Jr., New Orleans, for plaintiff-appellee.
Before GULOTTA, STOULIG and SCHOTT, JJ.
GULOTTA, Judge.
Plaintiff seeks commissions due on an oral contract to purchase goods in Europe (Spain) for the defendant.
The undisputed facts are that plaintiff liquidated her antique store in order to travel with her husband who was engaged in construction work in Europe. Morton's Auction Exchange purchased the entire contents of the store. Subsequently, Morton Goldberg (owner of Morton's Auction Exchange, hereinafter referred to as Morton) suggested that Mrs. Toranto purchase antiques for him on a commission basis while in Europe. Under the agreement, plaintiff was to receive 10 percent of the purchase price as her commission. Merchandise totaling $10,087.58 was purchased. Defendant paid plaintiff a commission in the sum of $500.00; however, he has refused to pay the remaining commission totaling $508.76 claimed by plaintiff. This suit followed. Plaintiff seeks the balance of the commission ($508.76) plus $42.00 representing merchandise purchased by plaintiff for herself and retained by defendant and $400.00 for inconvenience and mental anguish. The trial judge awarded plaintiff $508.76 and dismissed her other demands. Defendant appeals. Plaintiff neither appealed nor answered the appeal. We affirm.
The primary thrust of defendant's contention is that because of plaintiff's failure to purchase antiques as instructed, she is not entitled to the balance of the commission claimed. According to Morton, only a small part (25 percent of the purchase) consisted of antiques, and the balance consisted of new merchandise, the sale of which resulted in losses to him.
*769 It is plaintiff's contention that the original agreement to purchase only antiques was modified and altered by defendant. Mrs. Toranto insists defendant subsequently requested her to fill in the antique purchases with new merchandise including reproductions, brass beds, firearms and side arms. Plaintiff contends, in accordance with the modified agreement, she made the purchases as instructed. She claims that 55 or 60 percent of the merchandise purchased consisted of antiques.
The resolution of this dispute can only be determined from the pieced together chronology of events ascertainable from the testimony and exhibits. The following list will clarify the chronology of relevant events.
6/16/66 Letter from plaintiff to defendant day before departure suggesting
 that plaintiff will pay for merchandise in Europe
 directly and that defendant might deposit cost of purchases
 in plaintiff's bank account. Plaintiff states she will make
 purchases in Madrid and Barcelona.
 Plaintiff testified she received phone calls from defendant
 prior to June 23 which was followed by a note (subsequently
 lost) authorizing purchase of other than antiques.
6/23/66 Letter from defendant to plaintiff suggesting that plaintiff buy
 "lightly". Defendant further suggests plaintiff not purchase
 reproduction furniture until present sources (N. Y.) can be
 compared. Defendant instructed plaintiff to ascertain availability
 of firearms, side arms, rustic furniture and bronzes.
6/25/66 Letter from plaintiff to defendant from Madrid. Plaintiff
 itemizes list of goods purchased to date with a total cost
 of $6,229.92.
6/30/66 Letter from plaintiff to defendant from Madrid. Plaintiff itemizes
 purchases totaling, according to plaintiff, $6,230.00.
 (However, this figure fails to take into account an included
 itemized list of $520.75, which must be added to total purchases.)
 Plaintiff departs for Barcelona.
7/1/66 Telegram to plaintiff in Barcelona from defendant instructing
 plaintiff not to make any further purchases. Defendant indicates
 concern for cost of items. He further requests photos
 and name of castle from where items came. Telegrams and
 letters saying substantially the same thing were sent to Barcelona
 and Madrid and were dated 7/5/66 and 7/7/66.
Undated Letter from plaintiff in Barcelona to defendant written the
 first week of July expressing surprise at defendant's desire to
 purchase new merchandise.
7/9/66 Telegram to plaintiff in Barcelona from defendant in which
 he advises "Fill in with antique merchandise to make total
 of $10,000."
7/14/66 Letter to defendant from plaintiff in Barcelona acknowledging
 long distance telephone conversations with defendant. The
 letter contains itemized list totaling $3,364.08 in purchases.
 Plaintiff further advises defendant that the total purchases
 amount to $10,114.08.
*770 8/19/66 Letter from defendant to plaintiff stating "I've trusted you to
 the sum of $10,000 out of pocket money. I hope you can trust
 me for $1,000That's not out of pocket. I will pay you
 as soon as goods is (sic) checked in. All I want to ascertain
 that it does not cost us landed in U. S., more than I would
 have to pay for the same goods on the wholesale market in
 N. Y." Note: deposit slip in sum of $3,364.08 is attached
 to letter. This constitutes reimbursement to plaintiff for the
 total merchandise cost.
8/23/66 Letter from plaintiff to defendant expressing shock at Morton's
 letter of August 19. Plaintiff reiterates her demand for the
 $1,000 or 10% of purchases in commissions.
9/29/66 Invoice from Ibetsa (shipper in Spain) to Morton itemizing
 total cost of merchandise at $10,087.58, plus packaging costs
 in sum of $3,390.48. The invoice contains certification from
 Ibetsa that the goods itemized in invoice are genuine antiques
 in age in excess of 130 years.
11/8/66 Letter directed to director of customs withdrawing the claim
 of antiquity on the purchased items.
Several things are apparent from the chronology of communications. The first is that plaintiff and defendant communicated frequently by mail, telephone and telegram. Secondly, plaintiff forwarded to defendant itemized lists of the purchases. Third, defendant suggested purchases other than antiques be made. Fourth, a total of in excess of $10,000 was made in purchases. Fifth, defendant expected plaintiff to take more time and use greater care in making the purchases. And finally, a misunderstanding and subsequently a dispute followed as to whether or not plaintiff was instructed to purchase new merchandise in addition to antiques, and, if so, the extent of antique purchases defendant wanted made as compared to the extent of the new purchases plaintiff actually made.
While no written reasons were assigned, the trial judge, in resolving the dispute in plaintiff's favor, apparently concluded the original agreement to purchase antiques was modified by defendant's telephone instructions to plaintiff to purchase not only antiques but some new merchandise including reproductions, brass beds and firearms. The record supports such a conclusion. Plaintiff testified that she received telephone calls authorizing her to purchase merchandise other than antiques. These telephoned instructions, according to plaintiff, were received after her letter of June 16 to defendant, the day before her departure and sometime before defendant's letter dated June 23 suggesting plaintiff buy reproductions or new merchandise "lightly" until prices from New York sources could be compared. Plaintiff testified further she received a note from Morton, which was lost, confirming the telephone conversations. She stated that she did not receive the June 23 letter. Based on these instructions, according to plaintiff, she purchased the merchandise totaling $6,229.92, itemized in her letter to defendant dated 6/25/66.
Defendant, on the other hand, did not deny either the existence or content of the telephone calls. He stated only that he did not remember such calls. Additionally, defendant's telegram to plaintiff dated 7/9/66 in which he advised "Fill in with antique merchandise to make total of $10,000" is corroborative of plaintiff's version that she had been instructed to purchase *771 other than antiques. Also significant, by way of corroboration, is the $500.00 commission paid to plaintiff. This part payment, we believe, constitutes an acknowledgment of the indebtedness owed.
The trial judge also accepted plaintiff's version that she purchased new antiques in the proportionate amount as instructed by defendant. Plaintiff's testimony is that 55 or 60 percent of the purchases consisted of antiques. Defendant's testimony is that the antique purchases consisted of only 25 percent of the total. While it is apparent that plaintiff was instructed to purchase some new merchandise, there is no evidence to indicate that plaintiff was not allowed to use some discretion in the purchases. If indeed plaintiff erred in the proportionate amount of new merchandise purchased by her, this resulted either from the subsequent instructions given to plaintiff by defendant or by reason of plaintiff's error in judgment. We cannot say that plaintiff was instructed by telephone to purchase a specific proportion of new merchandise as compared to a certain proportion of antiques. There is no evidence to this effect. We cannot, therefore, say that plaintiff negligently or unfaithfully failed to carry out defendant's instructions. See C.C. art. 3003. Defendant's instructions obviously were not that explicit.[1] Plaintiff's error then, if any, could only be one of judgment. Such errors in good faith of an agent who contracts to perform personal services cannot serve as a basis for recovery against that agent. As pointed out in 3 Am.Jur.2d Agency § 204, § 205, an agent who has particular skills and talents in a certain field must exercise the care and skill expected of one in that field "But even an agent with purported special skills is not an insurer of his work and he will not be responsible for a mere error in judgment where he exercised the due care and appropriate skill of his profession." There is no evidence that plaintiff failed to use due care and skill expected of an expert in her profession.
Both plaintiff and defendant are licensed experts in the field of antiques. Like all fields of expertise, there are margins for disagreement.
It is clear from the testimony of plaintiff that the items purchased by her in Madrid and to some extent in Barcelona were, in her opinion, mostly of antique character. Defendant cannot now be heard to complain because his choice in a buyer was less than his expectations.
We do not place a great deal of significance on defendant's insistence that his withdrawal of his claim of antiquity on the merchandise furnished clearly indicates that the merchandise was not antiques. According to defendant, antiques purchased in foreign countries are duty free; however, this exemption does not apply to new merchandise. Although the shipper in Spain certified the contents to be antiques, Morton testified that upon receiving the contents, he ascertained that the greater part of the shipment was new merchandise. He immediately withdrew his claim of antiquity and paid the duty. He did so, according to his testimony, to avoid the payment of substantial penalties. However, no independent expert evidence was introduced by Morton to substantiate that defendant was required to pay the duty, particularly in view of the shipper's certification that the contents consisted of antiques. In the absence of such evidence, we cannot conclude Morton's action was warranted.
Under the circumstances, we do not find that plaintiff failed to carry out the defendant's instructions as understood by her.
*772 Plaintiff is clearly entitled to the balance claimed in commission totaling the sum of $508.76.
Defendant contends under LSA-C.C. art. 3534[2] or LSA-C.C. art. 3536[3] that this action is prescribed by one year. It is defendant's position that the merchandise was purchased on July 14, 1966, paid for on July 21, 1966, and suit was filed on September 1, 1967, more than one year later. Morton theorizes that plaintiff's claim is for laborer, workmen or servant's wages. He suggests further under LSA-C.C. art. 3536 this matter involves the shipment of merchandise on board a vessel and prescribes in one year.
Defendant also contends that plaintiff has failed to sustain the burden of proof required to prove the existence of an oral contract under LSA-C.C. art. 2277.[4] Morton argues there is no evidence of corroborative circumstances to support plaintiff's testimony. It is Morton's position that the testimony and documentary evidence relates to the subsequent modification of the purported contract. The evidence of corroborative circumstances, according to defendant, pertains to disputes arising after the existence of the purported agreement.
We find no merit to either contention. The one-year prescriptive period is clearly not applicable. This action is one of contract and governed by LSA-C.C. art. 3544[5] which provides for a ten-year prescriptive period. We were faced with a similar problem in the case of Tillman v. New Orleans Saints Football Club, 265 So.2d 284 (La.App. 4th Cir. 1972). In that case, we determined that the ten-year prescriptive period is applicable to a suit by a professional football player for wages owed under a contract. We declined to apply one-year prescription. In the instant case, as in Tillman, suit was based on the defendant's failure to pay for services agreed upon by contract. This is a personal action based on the alleged failure of compliance by defendant. With regard to LSA-C.C. art. 3536, this is clearly not an action for the delivery of merchandise shipped on board any kind of vessel. LSA-C.C. art. 3536 is clearly not applicable.
Addressing ourselves to the evidentiary question, we conclude that defendant's complaint of plaintiff's noncompliance with the requirements of LSA-C.C. art. 2277, i. e., failure to offer evidence of corroborative circumstances together with one credible witness to prove contracts over $500, has no validity. There is no dispute as to the agreement for the purchase of antiques. There is no disagreement as to the existence of a contract. The dispute arises on the amount of antiques purchased as compared to the amount of new merchandise purchased. In this connection, there is clearly evidence of corroborative circumstances as indicated by the foregoing chronology.
Finally, defendant (plaintiff in reconvention) claims losses consisting of custom duties paid on the entire shipment as *773 well as other losses incurred from the sale of the merchandise. We find no merit to this contention. Clearly, the agreement did not contemplate payment of an amount to plaintiff predicated on the losses or gains resulting from these purchases and subsequent sales. The judgment appealed from is affirmed.
Affirmed.
NOTES
[1] See 3 Am.Jur.2d Agency § 206 which states: "* * * Nor should the principal's instructions be construed as intended to be obligitory, unless they are distinct, positive, and express; an agent should not be held liable for a departure from the will of his principal where his orders are ambiguous, doubtful, or not explicit."

See also: Canada Steamship Lines v. Inland Waterways Corp., 166 F.2d 57 (5 Cir. 1948), at page 60.
[2] LSA-C.C. art. 3534 reads in pertinent par as follows:

"The following actions are prescribed by one year: * * *
"That of workmen, laborers and servants, for the payment of their wages. * * *"
[3] LSA-C.C. art. 3536 reads in pertinent part as follows:

"The following actions are also prescribed by one year: * * *
"That for the delivery of merchandise or other effects, shipped on board any kind of vessels. * * *"
[4] LSA-C.C. art. 2277 reads:

"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
[5] LSA-C.C. art. 3544 reads as follows:

"In general, all personal actions, except those before enumerated, are prescribed by ten years."