740 So.2d 210 (1999)
Samuel W. PARRY, M.D., et al.
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND, d/b/a Tulane Medical School.
No. 98-CA-2125.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1999.
*211 R. Ray Orrill, Jr., Orrill, Shearman & Cordell, LLC, New Orleans, Louisiana, and Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, W. Christopher Beary, Breazeale, Sachse & Wilson, LLP, New Orleans, Louisiana, Counsel for Plaintiffs/Appellees Samuel W. Parry, M.D. and the Class.
Harry S. Hardin, III, Edward H. Bergin, Edward D. Wegmann, Joseph J. Lowenthal, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, Judge ROBERT A. KATZ.
KATZ, Judge.
This is an appeal from a trial court judgement granting a request for class certification. Appellant, The Administrators of the Tulane Educational Fund, D/B/A Tulane Medical School, argues that the plaintiff, Samuel W. Parry, M.D. failed to prove that his claim for class certification met the statutory requirements in CCP Article 591(A).
Tulane Medical School consists of 14 academic departments, each of which is contractually obligated to pay the salaries of its respective full-time faculty physicians. The departments receive their funding from several sources, including grants, contractual arrangements with hospitals, and revenue collected by Affiliated Services Billing (ASB), a division of Tulane Medical Center.
Tulane's full-time physicians participate in the Tulane University Medical Group Faculty Practice Plan (FPP), a division of Tulane Medical School that bills, collects and distributes the professional income generated by the private practice of the faculty physicians. Pursuant to the FPP Agreement, the physician is guaranteed a base salary that is paid from "School source" funds and FPP sources. The faculty physician also has the opportunity to earn supplemental income from "FPP sources" through his private practice.
The Medical Center of Louisiana at New Orleans, formerly known as Charity Hospital at New Orleans (Charity) is owned and operated by the State of Louisiana and provides medical services, primarily to indigent patients. Charity also serves as a teaching hospital for both Tulane and Louisiana State University Medical Schools. The Tulane faculty physicians perform several services at Charity: they supervise the medical care rendered by interns and residents; they serve in hospital administrative positions; and they render direct patient care. And Affiliated Services Billing (ASB) is the division of Tulane Medical Center which bills and collects for these patient care services rendered at Charity.[1]
Plaintiff, a plastic surgeon and former Tulane faculty member, taught from July 1, 1986 until October 15, 1997. While employed as a full-time faculty physician in the Department of Surgery, he was an FPP participant. Plaintiff filed suit after he discovered that revenues Tulane received for medical services he had performed at Charity had not been included in his group practice compensation-an alleged violation of both his contract and the GFPP.
*212 Plaintiff seeks to certify as a class all present and former Tulane faculty physicians who were GFPP participants and had rendered professional services at Charity from July 1, 1987 through June 30, 1997. This putative class consists of approximately 470 present and former faculty physicians.
After considering the evidence at the hearing, the trial court identified the predominant issue in this claim to be a determination of whether the GFPP obligated Tulane to include the money it receives for the participants' work at Charity in the GFPP to be ultimately distributed to the participant as additional income.
Accordingly, the trial judge, Honorable Max N. Tobias, Jr., then proceeded to certify the following class:
"All [physician faculty] participants in the Tulane University Medical Group Faculty Practice Plan during the period July 1, 1987 to June 30, 1997 who performed any professional [medical] activities or services at Charity Hospital and Medical Center of Louisiana at New Orleans (SIC) or Charity Hospital of Louisiana at New Orleans."
The trial court judgement further stated:
"Judgement is rendered reserving to the Court the right to vacate class certification should a significant number of class members opt out of the class thereby bring the number of class members below that legally necessary to have a class under Article 591(A) of the Code of Civil Procedure".
This Court in Spitzfaden v. Dow Corning, 619 So.2d 795, 798 (La.App. 4 Cir., 1993), writ denied, 624 So.2d 1236, 1237 (La.1993) held that the burden is on the plaintiffs to establish that the statutory criteria are met.
This Court finds that the trial court amply discussed the various prerequisites for the maintaining of a class action pursuant to CCP Article 591(A), and how each of the criteria has been met in its reasons for judgement.
This Court has also recognized that the trial court is given "wide latitude" in considerations that require an analysis of the facts relative to the prerequisites for class certification in a given case, and its decision on certification must be affirmed unless it is manifestly erroneous. Adams v. CSX Railroads, 92-CA-1077 (4th Cir. 2/26/93), 615 So.2d 476, 481. On the record before it, this Court cannot say that the Trial Court's decision to certify a class action at this time is manifestly erroneous.
For the foregoing reasons, the judgement of the trial court dated March 10, 1998, certifying a class action is affirmed.[2]
AFFIRMED.
LANDRIEU, J., DISSENTS WITH REASONS.
LANDRIEU, J., dissenting with reasons.
I respectfully dissent from the majority opinion and would reverse the judgment of the trial court, as I find plaintiff failed to establish the statutory requirements for class certification.
*213 Plaintiff alleges that he had no knowledge that Tulane failed to compensate him for his services rendered at Charity until April 1997. Tulane, on the other hand, contends that when it hired plaintiff in 1986, it informed him of its faculty compensation procedures. According to Tulane, it advised plaintiff that he would become a FPP participant, explaining that the FPP would handle the billing, collections and distributions of the professional income generated by the respective faculty physician participant's private clinical practice. Pursuant to the FPP Agreement, which plaintiff signed, the physician was guaranteed a base salary that would be paid from "School source" funds and "FPP sources." The physician also had the opportunity to earn supplemental income from "FPP sources" through his/her private practice.
Tulane further asserts that at the time of his hiring, plaintiff also met with Thomas Tobin, the department administrator for ASB. Tobin explained to plaintiff that pursuant to his employment agreement with Tulane, ASB, not FPP, would bill for his professional services at Charity and that all funds collected belonged to the academic departments to be allocated by the department chairs according to each department's needs. He further explained that the revenue it received for Charity work performed by faculty physician participants had always been considered "School source" funds used to support base salaries and other departmental expenses. By signing the ASB Agreement, plaintiff authorized ASB to bill and collect for his Charity services and relinquished any direct claim on the collected funds.
Tulane also points out that plaintiff was a member of the Executive Committee of the Department of Surgery, which determined how ASB funds generated by patient care at Charity were to be distributed within that department. As a member of the executive committee, plaintiff participated in the surgery department's FPP modification and executed the Department of Surgery "Principles of Agreement" acknowledging that the department pooled funds for the collective benefit of all members. During his years at Tulane, plaintiff never objected to the distribution of the funds or the billing procedures. He also failed to pursue any administrative remedies that were available under the FPP Agreement to faculty physician participants who had contractual disputes with Tulane.
La.Code Civ. Proc. art. 591[1], as amended by Acts 1997, No. 839, § 1, provides in part:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the *214 constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
Plaintiff who seeks to establish a class action bears the burden of establishing that the statutory criteria are met. Spitzfaden v. Dow Corning Corp., 619 So.2d 795, 798 (La.App. 4th Cir.), writ denied, 624 So.2d 1236, 1237 (La.1993). Mere conclusory allegations are insufficient to establish the existence of a class. Honeywell, Inc. v. Bernstein, 479 So.2d 32 (La. App. 4th Cir.1985).
With regard to numerosity, there is no set number that automatically makes joinder impracticable; rather the determination is based on the facts and circumstances of each case. Williams v. Orleans Parish School Board, 541 So.2d 228 (La. App. 4th Cir.1989). Although identification of all potential class members is not necessary, the party seeking certification should establish a definable group of aggrieved claimants. Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.), writ denied, 526 So.2d 810 (La.1988).
In Farlough v. Smallwood, supra, plaintiff filed suit challenging the rent adjustment policy of the Housing Authority of New Orleans (HANO) and asserted that HANO provided housing to over 13,000 persons under a standard lease. She requested that she be certified as a representative in a class action suit. Certification was denied. On appeal, despite the alleged numerosity, we affirmed the lower court, stating:
In this case, there is no evidence in the record to indicate that all of HANO tenants, or even a substantial number of them, have been aggrieved by the policy. Further, we find that plaintiff has not sufficiently established that there exists a group of people who have requested adjustments and been denied relief. Additionally, the plaintiff has not shown that the alleged aggrieved parties are not identifiable and no obstacles have been shown which might hamper their joinder. (Citation omitted).
524 So.2d at 203.
Plaintiff testified that in April 1997 he first suspected he may not have been compensated for his Charity services after reading a newspaper article that stated Dr. Aizenhawar J. Marrogi[2], a friend of his, had filed suit against Tulane alleging that revenues from Charity were not accounted for in the FPP. Although plaintiff introduced into evidence a list of 470 present and former faculty physicians who were FPP participants and had performed services at Charity from 1987 to 1997, on cross examination he admitted that, other than Dr. Marrogi and himself, he knew of no other former or present faculty physicians who were FPP participants who asserted or wanted to assert a similar claim against Tulane.
In certifying plaintiffs claim as a class action, the trial judge found that "[t]he potential class is numerous enough at present, there being more than 490 members of the class." However, in view of the jurisprudence, I conclude the trial court's finding is clearly in error. Although plaintiff submitted a lengthy list, he put forth no evidence whatsoever to indicate that any of the named physicians, other than Dr. Marrogi, alleged and/or sought to allege a similar breach of contract claim or any other type of claim regarding faculty compensation against Tulane. In the absence of such proof, plaintiff failed to establish the numerosity requirement under La.Code Civ. Proc. art. 591 A(1).
Regarding commonality, La.Code Civ. Proc. art. 591A(2) requires the party seeking class certification to establish that there are questions of law or fact common to the class. Similarly, La.Code Civ. Proc. art. 591B(3) requires that the court find "that the questions of law or fact *215 common to the members of the class predominate over any questions affecting only individual members." Article 591C cautions that "[c]ertification shall not be for the purposes of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class," while article 592E(5) provides that "the court may not order the class-wide trial of issues dependent for their resolution on proof individual to a member of the class, including but not limited to the causation of the member's injuries, the amount of the member's special or general damages, the individual knowledge or reliance of the member, or the applicability to the member of individual claims or defenses."
As Tulane notes, each faculty physician enters into an individual employment contract that may be modified orally, through subsequent written agreements or through customary practices. In addition to Tulane's negotiations with the faculty physicians, each academic department also negotiates compensation with its respective faculty physicians. More significantly, annually each faculty physician reviews his (her) employment contract and negotiates any amendments to it.
At the hearing on class certification, plaintiff testified and introduced into evidence his faculty salary schedules and contract worksheets for the years July 1987 through June 1998. According to him, during that period he spent approximately 40 to 50 percent of his time rendering professional services at Charity. Each year plaintiff received, reviewed, negotiated and signed a faculty salary schedule and contract worksheet, which listed his base salary, the sources of income, deductions, fringe benefits, and distributions for the year. Plaintiff further acknowledged that he reviewed and signed both the FPP and ASB Agreements, yet he thought the Charity generated revenues were funneled to the FPP and distributed as income. If this were the case for all faculty physicians, each would have to offer different facts to establish: (1) the terms of his or her employment contract, (2) that Tulane breached the contract; and, (3) that he or she suffered quantifiable damages as a result. Certainly, the individual issues raised regarding each faculty physician's compensation predominate over any common issues. In my opinion, the commonality requirement is lacking.
Louisiana Code of Civ. Proc. article 591 A(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. As permitted by Section IX of the FPP agreement, for the years pertinent to this litigation, the Department of Surgery elected to distribute its funds, including the ASB funds received for work performed at Charity, according to its own plan. Thus, any claim plaintiff may have regarding his income is directly related to the Department of Surgery's distribution of its funds, as agreed on by members of the department. Because the various academic departments elected to distribute their funds in different ways and some departments chose not to modify the FPP Agreement, plaintiff's claims are not typical of the claims of other faculty physician FPP participants, particularly those who were not members of the surgery department.
Pursuant to La.Code Civ. Proc. article 591A(4), the representative party must fairly and adequately protect the interests of the class. One of the criteria for determining whether a named plaintiff is an adequate class representative is whether the claims asserted are not antagonistic to the class; e.g., Lewis v. Texaco Exploration Co., 96-1458 (La.App. 1 Cir. 7/30/97), 698 So.2d 1000; Ellis v. Georgia-Pacific Corporation, 550 So.2d 1310 (La.App. 1 Cir.1989). More than likely, any relief plaintiff seeks on behalf of the class, i.e., reallocation of funds derived from patient care at Charity, would have an adverse financial effect on Tulane. As a former faculty member, plaintiff no longer has a vested interest in Tulane's continued viability. Unlike him, putative class members who are current faculty physicians do have *216 a vested interest in it. In addition, Tulane demonstrated that if plaintiff is successful in asserting his claim, a majority of the current faculty physicians would be adversely affected financially. Dr. Lewis Flint, Chairman of the Department of Surgery, testified and explained that because funds processed through the FPP were subject to much higher deductions than the funds processed through ASB, current faculty physicians would stand to lose a substantial amount of money if the Charity generated funds are processed through the FPP. Where there exist apparent conflicts of interest between plaintiff and the current faculty physicians, plaintiff is not an adequate class representative.
Furthermore, as a member of the Executive Committee of the Department of Surgery, plaintiff was in a position to influence how funds collected for patient care at Charity were distributed, yet he did nothing to have these funds processed under the FPP. In view of this, he should be precluded from now asserting such a claim. Nonetheless, Tulane cannot assert an estoppel defense against the entire class, as not all faculty physicians were in a similar position. Clearly, plaintiff is not an adequate class representative because he will have to defend against claims that are unique to him.
I also note that the record indicates that neither plaintiff nor any other putative class member has pursued any of the available remedies under the FPP Agreement. For this reason, too, class certification should be denied.
Finally, the principal result of certifying the class will be the promotion of conflict where it does not now exist. The members of the proposed class are highly educated, intelligent and, presumably, affluent physicians. They are not distant strangers to one another. These physicians have been or are currently members of the same medical school faculty. Surely they are aware of the allegations against Tulane, yet none, save plaintiff and his friend, has filed suit or sought to join in plaintiffs action. In my opinion, certifying this class will do far more harm than good to the court, the defendant and members of the proposed class.
NOTES
[1] Tulane contends that the ASB collected funds are independent of the FPP and, after certain deductions, these funds are distributed to Tulane's academic departments as "School source funds" for use as each department deems appropriate; or, the departments are allowed to use the ASB funds to pay in part the "School source" portion of the faculty physician participants' base salaries; or, the departments may cover deficits where participants have not generated sufficient revenues to satisfy their salaries through private practice; or, a department may choose to distribute the ASB funds to its faculty physician participants in the form of bonuses.
[2] The dissent argues that the criteria for numerosity has not been met. As this Court stated in Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4 Cir.1989), "with regard to numerosity, there is no set number that automatically makes joinder impractical; rather the determination is based on the facts and circumstances of each case."

Accordingly, the trial court obviously concluded that there was sufficient numerosity to certify a class action and the trial court findings should be given due deference.
Even if class certification were to be denied, the joinder articles 641-647 permit the Court or any party to join as a defendant if there is "a substantial risk of incurring multiple or inconsistent obligations." CCP Article 641(2)(b).
Also, see CCP Article 592 D that provides that a class action may be maintained only with respect to "particular issues" if the Court so deems it appropriate.
[1] Former La.Code Civ. Proc. art. 591, relevant to prerequisites for class actions, provided:

A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
La.Code Civ. Proc. art. 591, as amended by Acts 1997, No. 839, § 1, effective July 1, 1997, retains the prior Louisiana Code of Civil Procedure requirements of numerosity, commonality, and adequate representation.
[2] Dr. Marrogi, a former professor in the Department of Pathology, filed suit against Tulane on April 18, 1997, alleging breach of contract and other causes of action after Tulane failed to reappoint him to the faculty.