742 So.2d 728 (1999)
BILLES/MANNING ARCHITECTS, A Professional Corporation
v.
ACCOUNTEMPS, DIVISION OF ROBERT HALF OF LOUISIANA, INC.
No. 98-CA-3044.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1999.
*729 Kyle Schonekas, Joelle Flanagan Evans, Schonekas, Evans & McGoey, L.L.C., New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Hervin A. Guidry, Bastian & Brooks, New Orleans, Louisiana, Counsel for Defendant/Appellee.
*730 Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG and Judge MIRIAM G. WALTZER.
WALTZER, Judge.

STATEMENT OF THE CASE
Billings/Manning Architects (B/MA) appeals from the trial court's judgment dismissing its suit against Accountemps, Division of Robert Half of Louisiana, Inc. (Accountemps) on Accountemps' Motion for Summary Judgment. Because we find that B/MA failed to meet its burden of proof under the summary judgment law, we affirm.
Accountemps filed suit against B/MA on 16 July 1991 in Second City Court of the City of New Orleans to recover 9,128.25 plus interest and attorney's fees due arising out of B/MA's employment of Barbara Boyle as a temporary employee and a conversion fee arising out of B/MA's hiring Boyle as a permanent employee. On 24 March 1992, the court rendered judgment as prayed for against B/MA. B/MA represents in the petition in the instant case that it has paid $12,000 toward its obligation to Accountemps under that judgment.
In 1996, B/MA sued Accountemps in the instant case for breach of contract and warranty. B/MA claimed that it had engaged Accountemps to procure a Certified Public Accountant; however, although Ms. Boyle and Accountemps represented that she held a CPA certificate, such was not the case. B/MA sought to rescind the original contract and recover its partial payment under the Second City Court judgment.
B/MA's answers to Accountemps's interrogatories establish the following:
1. After B/MA initially hired Ms. Boyle in September 1990, she left on maternity leave in November, 1991.
2. In January, 1992, Ms. Boyle advised B/MA she would not return to work.
3. In March, 1992, Ms. Boyle briefly returned to B/MA on a part-time basis to close out the 1991 fiscal year.
4. In May, 1992, Ms. Boyle told B/MA she had accepted a position with an engineering firm.
5. In May, 1993, Ms. Boyle met with representatives of B/MA, indicating her displeasure with her job with the engineering firm.
6. In July, 1993, Mr. Manning and Mr. Billes of B/MA hired Ms. Boyle again.
There is no dispute that Ms. Boyle voluntarily left B/MA and voluntarily terminated the job Accountemps had arranged in January, 1992. It is also undisputed that Accountemps had nothing to do with the July, 1993 hiring.
Accountemps also provided the uncontroverted affidavit of its president, Dianna Rushing. That affidavit established:
1. In August, 1990, Accountemps placed Ms. Boyle as a temporary employee with B/MA.
2. After this temporary placement, B/MA advised Accountemps that it was converting Ms. Boyle's employment to full-time status.
3. Accountemps and B/MA did not execute a written contract concerning provision of Accountemps's services in connection with Ms. Boyle's placement. The time record sheets provide as "conditions of assignment" that B/MA agreed to pay a conversion fee in the event B/MA converted Ms. Boyle's status to full-time.
4. Accountemps was not advised of B/MA's hiring of Ms. Boyle in 1993.
5. Accountemps played no role in B/MA's hiring of Ms. Boyle in 1993.
The "Conditions of Assignment" attached to the affidavit are silent as to representations or requirements concerning Ms. Boyle's educational background or CPA status.
According to B/MA's answers to Accountemps's interrogatories, in August, 1995, *731 Mr. Manning received an anonymous letter advising him that Ms. Boyle was not, in fact, a CPA. Apparently in reaction to this letter, B/MA fired Ms. Boyle from the job for which they hired her in 1993.

STANDARD OF REVIEW AND BURDEN OF PROOF
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1182; Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La. 1991).
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A.(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
The burden of proof remains with the movant. However, where, as here, the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, as here, where the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
B/MA may not rest on the mere allegations or denials of its pleading, but its response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
The amended article 966 substantially changed the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. These jurisprudential presumptions against granting summary judgment were legislatively overruled by La.C.C.P. art. 966 as amended. The amendment levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial.
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La. C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by mover, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to La.C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. *732 The summary judgment law was amended by La.Acts No. 483 of 1997 to incorporate the Hayes analysis. This, as under Fed. Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for that party.
In Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed.Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. Berzas v. OXY USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; Martello v. State Farm Fire and Cas. Co., 96 2375 (La.App. 1 Cir. 11/7/97), 702 So.2d 1179, 1183-84, writ denied, 98-0184 (La.3/20/98), 715 So.2d 1215.
Argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues. Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4 Cir.1990), writ denied 572 So.2d 68 (La.1991).
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La. 1993).

ASSIGNMENT OF ERRORS
B/MA did not supply this Court with an assignment of error as required by Rule 2-12.4 of the Uniform RulesLouisiana Courts of Appeal, which mandates "a specification or assignment of alleged errors relied upon, [and] the issues presented for review." In the interest of judicial economy, we will consider appellant's argument nonetheless.
B/MA introduced no evidence in the trial court. It is therefore relegated to showing that Accountemps failed to sustain its burden of proof under the summary judgment law. B/MA states in brief, "Accountemps supporting documents were not sufficient to resolve all material factual issues." However, B/MA does not specify these unresolved material factual issues. We note that it is not Accountemps's burden to "resolve all material factual issues." Accountemps need only demonstrate that there is no question concerning a material fact as to which B/MA has the burden of proof at trial. At that point, the burden of proof shifts to B/MA.
As the trial court noted in its Judgment and Incorporated Reasons, Accountemps has established without contradiction that B/MA did not fire Ms. Boyle from the job procured through Accountemps. She voluntarily resigned to take a job with an engineering firm. There is no suggestion that her job performance was in any was deficient or that her alleged failure to hold a CPA certificate adversely affected B/MA. Indeed, B/MA does not claim that it was *733 damaged as a result of this alleged deficiency.
B/MA has quite simply failed to put at issue any of the foregoing material facts. Because of B/MA's failure to do so, summary judgment was appropriate.

CONCLUSION AND DECREE
We affirm the trial court's judgment granting Accountemps's Motion for Summary Judgment dismissing all of B/MA's claims with prejudice. Costs of this appeal are assessed to the appellants.
AFFIRMED.
ARMSTRONG, J., dissents with reasons.
ARMSTRONG, J., DISSENTING WITH REASONS.
I respectfully dissent. In this case, the plaintiff, an architectural firm, sues an employment agency through whom it hired an employee. The plaintiff seeks recission of its contract with the defendant employment agency, and recovery of the fee it paid to the employment agency, upon the ground that the employee hired was not a CPA as had been represented. Summary judgment was granted for the defendant. Under the facts as the defendant has conceded them to be solely for purposes of the motion for summary judgment, it appears that there was error with respect to the cause of the contract between the plaintiff and the defendant. Therefore, I would reverse and remand for further proceedings.
In August of 1990, plaintiff Billes/Manning Architects, PC hired Barbara Boyle through Accountemps, a Division of Robert Hall of Louisiana, Inc. Three documents evidence at least some of the terms of the contract between Billes/Manning and Accountemps. First, there was an August 7, 1990 Conditions of Assignment, signed on behalf of Accountemps, which stated that the position to be filled was "Accountant" and that the employee was to be Barbara Boyle. That document also stated the hourly wage and had twelve preprinted paragraphs stating various terms and conditions. There also were August 24 and 31, 1990 time record sheets, signed by Billes/Manning, which contained under the caption "Conditions of Assignment" the same twelve preprinted paragraphs as the August 7, 1990 document.
Billes/Manning alleges that it requested that Accountemps supply a CPA. Ms. Boyles resume' stated that she was a CPA and that she had a college degree in accounting. Initially, Billes/Manning hired Ms. Boyle for a period of weeks on a part-time basis. On September 1, 1990, Billes/Manning hired Ms. Boyle as a full-time employee.
Among the twelve numbered paragraphs of the Conditions of Assignment in the three contract documents was a provision for a fee to be paid by Billes/Manning to Accountemps in the event that Billes/Manning hired Ms. Boyle as a full-time employee. That provision included a formula for the calculation of the amount of the fee. Evidently, Billes/Manning did not pay the fee because Accountemps sued Billes/Manning for the fee. Judgment was rendered against Billes/Manning for the $9,128.25 fee and, with attorney's fees and interest, the judgment totaled $14,900.18. Billes/Manning made two payments to Accountemps, one of $8,000 and another of $4,000, on that judgment.
Ms. Boyle worked for Billes/Manning as a full-time employee for about sixteen months and quit voluntarily in January, 1992.
Subsequently, Ms. Boyle, after having worked for another employer for some time, was rehired by Billes/Manning in July, 1993. Later, Billes/Manning received information, which it verified, that Ms. Boyle was not, in fact, a CPA. Also, Billes/Manning determined that Ms. Boyle did not have a college degree in accounting. Consequently, Billes/Manning fired Ms. Boyle.
*734 Billes/Manning then filed the present action seeking various relief including recission of the contract and recovery of the $12,000 paid by Billes/Manning to Accountemps. A default judgment was entered in favor of Billes/Manning but was set aside on appeal. After remand, Accountemps filed a motion for summary judgment which was granted. Billes/Manning brings the present appeal from that summary judgment.
For purposes of its motion for summary judgment, Accountemps concedes that Billes/Manning sought from Accountemps a CPA employee.[1] Thus, for purposes of this appeal, I also would assume, without deciding, that Billes/Manning sought a CPA employee from Accountemps. Also, this is consistent with the August 7, 1990 Conditions of Employment signed on behalf of Accountemps which stated that Ms. Boyle was to fill the position of "Accountant" rather than "bookkeeper" or a similar clerical-type position. It appears to be uncontested that both Billes/Manning and Accountemps thought that Ms. Boyle was a CPA.
Billes/Manning argues that, because it sought a CPA, and because it and Accountemps erroneously believed that Ms. Boyle was a CPA, the contract between it and Accountemps should be rescinded and the $12,000 it paid to Accountemps should be returned. Error may be grounds to rescind a contract. La. Civ.Code arts.1948, 1952. Error is a ground to rescind a contract only when it "concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ.Code art.1949. "The granting of relief for error presents no problem when both parties are in error, that is, when the error is bilateral." La. Civ.Code art. 1949 Revision Comment 1984 (d). Error may concern a cause of a contract when it bears upon a substantial quality of a person. La. Civ.Code art. 1950.
Keeping in mind the assumption, for purposes of this appeal, that Billes/Manning sought from Accountemps a CPA, it is perfectly reasonable for Billes/Manning to contend, as it does, that it would not have contracted to pay to Accountemps a fee for placing Ms. Boyle if it had known that Ms. Boyle was not a CPA. Also in accord with the assumption that Billes/Manning sought a CPA from Accountemps, and the uncontested fact that Ms. Boyle misrepresented herself to be a CPA, it must also be assumed that Accountemps knew that Billes/Manning believed Ms. Boyle was a CPA. Indeed, both parties believed that Ms. Boyle was a CPA, so the error was bilateral. Further, in highly-educated professions such as accounting, a professional certification, such as a CPA, is a most substantial quality of the professional person in questionin this case, Ms. Boyle.
Accountemps points out that it received a fee for placing Ms. Boyle with Billes/Manning for her first period of employment there. Accountemps also points out that Ms. Boyle's misrepresentation that she was a CPA was not discovered during that first period of employment and that she ultimately ended that first period of employment voluntarily. Ms. Boyle ultimately was fired from her second period of employment and Accountemps had nothing to do with the hiring of Ms. Boyle for the second period of employment. From these facts, Accountemps concludes that the error as to Ms. Boyle's status as a CPA cannot be a basis to rescind the contract. I find this unpersuasive. It is true that Accountemps' fee was earned in connection with the first period of employment, but the error as to Ms. Boyle's CPA status occurred in connection with the hiring of her for the first period of employment (and simply continued into the second *735 period of employment). The fact that the error was not discovered until the second period of employment is irrelevant. Indeed, whether or not there even was a second period of employment has no bearing on whether the error which occurred with the hiring for the first period of employment justifies rescission of the contract for the first period of employment.
Accountemps also argues that, because Ms. Boyle was never fired from her first period of employment, Billes/Manning never suffered any damages during the first employment period as a result of the error as to Ms. Boyle's CPA status. Restated somewhat, the argument is that, despite the fact that Ms. Boyle was not a CPA, she was a satisfactory employee during the first period of employment and, therefore, Accountemps earned its fee. I disagree for several reasons.
First, a CPA is a professional credential of great significance. If Billes/Manning specified a CPA in connection with its contract with Accountemps, then it was entitled to a CPA. I would not presume that the services of a non-CPA can be the equivalent to the services of a CPA.
Second, even if Billes/Manning did not find the services of Ms. Boyle unsatisfactory, one of the very reasons for hiring (or engaging) a highly-credentialed professional such as a CPA is because the employer (or client) does not itself have the expertise of the credentialed professional. Architects, not having the expertise of CPAs, really would not know whether Ms. Boyle was performing at the level of a CPA.
Third, the costs and complexity of hiring and retaining a highly-credentialed professional such as a CPA are typically greater than is the case with clerical personnel such as bookkeepers. The wages paid to a CPA are likely to be greater than those paid to a bookkeeper. The need to go to a placement agency such as Accountemps, and to pay a placement fee of over $9,000, is likely to be greater with a CPA than a bookkeeper. For example, Billes/Manning might have resorted to an inexpensive newspaper classified advertisement if all that it sought was a bookkeeper.
In the final analysis, whether or not Ms. Boyle was a CPA would be a "substantial quality," La. Civ.Code art.1950, of Ms. Boyle in terms of Billes/Mannings's decision to hire her for the position described in the August 7, 1990 contract documents as "Accountant."
I would reverse the summary judgment and remand for trial.
NOTES
[1] Accountemps made this concession of fact solely for purposes of its motion for summary judgment and would be free, at trial on remand, to dispute whether Billes/Manning sought a CPA.