778 So.2d 627 (2000)
Steven P. ALEXANDER
v.
The HENDERSON CONDOMINIUM ASSOCIATION, INC., et al.
No. 99-CA-2906.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 2000.
Writ Denied March 23, 2001.
*628 Jack Edward Morris, Metairie, LA, for plaintiff/appellant.
Gregory S. Lacour, Lawrence J. Ernst, Christovich & Kearney, L.L.P., New Orleans, LA, for defendant/appellee.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER and Judge JAMES F. McKAY III.
ARMSTRONG, Judge.
This is a suit by the purchaser-owner of a condominium unit. He asserts several legal theories. Factually, his complaint is that the unit is noisy when a rooftop club-house and jacuzzi area above his unit are in use. The contract for the purchase and sale of the unit and the act of sale for the unit contained prominent, explicit and strongly-worded waivers of warranty. The trial court granted summary judgment for the defendants. We affirm.
Plaintiff Stephen P. Alexander purchased a condominium unit, Unit 301, in the Henderson Condominiums at 700 Commerce Street in New Orleans. The building had been rental apartments but had been converted to condominium units.
On September 11, 1995, Mr. Alexander entered into an Agreement of Purchase and Sale which included the following waiver of warranty provision:
Vendor's Warranty As To The Unit is Limited As Follows:
VENDOR AGREES TO ONLY WARRANT AND WILL ONLY CAUSE TO BE CORRECTED ANY DEFECTS IN THE APPLIANCES IN THE UNIT, WHICH DEFECTS ARE DUE TO IMPROPER WORKMANSHIP OR MATERIAL, PROVIDED AND ON THE CONDITION THAT VENDOR IS NOTIFIED OF SUCH DEFECT, IN WRITING, BY THE VENDEE OF SAID UNIT NO LATER THAN ONE (1) YEAR AFTER THE CLOSING OF THE TITLE FOR SUCH UNIT. VENDOR'S OBLIGATION AS TO WARRANTY SHALL BE LIMITED TO THE FOREGOING. VENDOR IS NOT A BUILDER WITH RESPECT TO ANY ASPECT OF THE CONDOMINIUM AND ITS STATUS IS LIMITED TO THAT OF A VENDOR UNDER LOUISIANA LAW. EXCEPT AS EXPLICITLY DESCRIBED IN THE FIRST SENTENCE OF THIS PARAGRAPH. THE UNIT HEREIN CONVEYED AND THE CONDOMINIUM PROPERTY IN GENERAL (INCLUDING COMMON ELEMENTS, LIMITED COMMON ELEMENTS AND SPECIAL COMMON ELEMENTS), ARE SOLD AND TRANSFERRED TO VENDEE "AS IS", WITHOUT ANY WARRANTY WHATSOEVER, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY SUCH WARRANTIES WITH RESPECT TO FITNESS FOR INTENDED PURPOSE OR ANY SUCH WARRANTIES AGAINST VICES AND DEFECTS EVEN HIDDEN OR LATENT DEFECTS THAT COULD NOT BE DISCOVERED BY AN INSPECTION.
*629 In addition to signing the contract, Mr. Alexander initialed next to the waiver of warranty provision.
Mr. Alexander moved into Unit 301 sometime during the first ten days of October, 1995. On October 27, 1995, the parties entered into an Act of Sale which contained a waiver of warranty virtually identical to that included in the Agreement of Purchase and Sale and quoted above.
In November or December, 1995, Mr. Alexander began to hear noises in the condominium unit which disturbed him, particularly when they occurred at night. The noises were coming from a rooftop clubhouse and jacuzzi area used by other unit owners.
Mr. Alexander argues that the occurrence of these noises constitutes a breach of contract, a redhibitory defect, a tortious nuisance and a violation of the New Home Warranty Act. He sued 700 Commerce General Partnership and its several member partners. The defendants moved for summary judgment based upon the above-quoted waiver of warranty. Of course, summary judgment may be granted only if, based upon the affidavits, discovery materials, etc. filed, there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ.Proc. art. 966.
We agree with the trial court's decision to grant summary judgment. The waiver of warranty is clear, explicit and strongly worded. The waiver of warranty expressly limits any warranty to the appliances, and provides that the unit is sold "as is", without any warranty whatsoever, either express or implied, including, but not limited to, any such warranties with respect to fitness for intended purpose or any such warranties against vices and defects, even hidden or latent defects that could not be discovered by inspection. This waiver of warranty was brought to Mr. Alexander's attention by requiring him to initial next to it. Mr. Alexander, who has an M.B.A., cannot be heard to say that he did not understand the waiver of warranty.
The only serious attack that Mr. Alexander makes upon the waiver of warranty provision is a claim that he entered into the purchase and act of sale due to error induced by fraud. Specifically, Mr. Alexander states that, prior to his purchase of Unit 301, he was told by representatives of the sellers that there had never been a complaint about Unit 301. Mr. Alexander then states that, in late summer or the fall of 1998, he spoke to a former tenant of Unit 301 who told Mr. Alexander that, while a tenant, he had complained to the management about noise in Unit 301. We need not decide whether, if proven at trial, these alleged facts would be sufficient to vitiate the waiver of warranty because the testimony by Mr. Alexander as to what he was told by the former tenant in Unit 301 is clearly hearsay and, as such, cannot be considered in opposition to the defendants' motion for summary judgment. La.Code Civ.Proc. arts. 966-967.
Lastly, Mr. Alexander argues that, under the New Home Warranty Act, R.S. 9:3141 et. seq., there was no waiver of warranty as to a "major structural defect". R.S. 9:3143(5); 9:3144.A(3); 9:3144.C.
We need not decide the applicability of the New Home Warranty Act to the condominium unit or to the defendants because it is clear that the noise caused by the neighbor's use of the clubhouse and jacuzzi area is not a "major structural defect", R.S. 9:3143(5), if for no other reason than the absence of any allegation of any "actual physical damage."
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PLOTKIN, J., dissents with written reasons.
JONES, J., dissents with reasons assigned by Judge PLOTKIN.
*630 PLOTKIN, J., dissenting with written reasons:
This case presents important issues relative to the liability of members of defendant, 700 Commerce, a general partnership that developed and managed a condominium complex containing a unit purchased by plaintiff Steven P. Alexander. Mr. Alexander claims that the condominium he purchased is not "fit for ordinary use"i.e., to serve as a residence because of excessive noise coming from a rooftop clubhouse and jacuzzi area located above his third-floor unit. The trial court dismissed Mr. Alexander's claims against 700 Commerce on a motion for summary judgment. Based solely on a waiver of warranty signed by Mr. Alexander in the Purchase Agreement and Act of Sale, the majority affirms the trial court's granting of the motion for summary judgment, dismissing Mr. Alexander's case.
I respectfully dissent from that decision. The affirmation of the summary judgment in this case has far-reaching implications beyond the parties to this controversy. The effect of the majority's decision is that Mr. Alexander's rote signing of contracts containing waivers of warranty and "as is" clauses trumps traditional Louisiana legal principles relative to contract law that classically have been found to invalidate those contracts. In fact, Mr. Alexander will be tragically denied an opportunity to present evidence and arguments to prove his claim that his signature was secured by fraud and ill practices, which he properly plead in his petitions in this case.

FACTS
The condominium at issue in this case is located in Henderson Condominiums at 700 Commerce Street in New Orleans. Originally, the building at that address was a sugar refinery and warehouse. Approximately ten years before the filing of this lawsuit, it was converted into apartments. Then at some time before September of 1995, the apartment complex was converted to condominiums.
On September 11, 1995, Mr. Alexander and Henderson Condominiums entered into an "Agreement of Purchase and Sale," whereby Mr. Alexander agreed to purchase condominium number 301 in the Henderson Condominium complex. The purchase agreement contained the waiver of warranty quoted in the majority's decision.
Mr. Alexander moved into unit 301 sometime during the first part of October 1995. On October 27, 1995, the parties executed the Act of Sale for unit 301; the sales agreement contained a similar waiver of warranty provision. Mr. Alexander was the first owner of the condominium, but not the first person to live there. Mr. Alexander claims that the mail he received indicates that at least 10 people resided in the unit during the time it was an apartment. Unit 301 is situated on the third floor of the Henderson Condominiums building, directly below a rooftop common area equipped with a clubhouse and jacuzzi. All members of the Henderson Condominium Association and their guests are allowed to use the common area.
Mr. Alexander claimed in his petition that he was specifically told by at least three sales agents/managers that "there had never been a complaint by a previous resident of unit 301," prior to his purchase of the condominium. However, within a month of his purchase of the condominium, Mr. Alexander asserts, he began to hear excessively loud noises coming from the rooftop area. Prior to that time, Mr. Alexander asserts, the jacuzzi had not been working. Mr. Alexander claims that he reported the noise problems to the condominium managers, who continually assured him that they had never before received complaints about noise from the rooftop common area. Mr. Alexander described the noise and its results as follows in his petition:
The noise penetrating Plaintiff's condo includes buzzing, vibration, shaking, *631 shock waves, loud voices, music, thumping, and vacuuming. The noise is excessive, unreasonable in degree, and produces physical discomfort and annoyance, loss of sleep, and daytime sleepiness.
Mr. Alexander sought the assistance of the management and of the Henderson Condominium Association to remedy the problem. For example, Mr. Alexander claims that around January 1997, he requested that the Henderson Condominium Association consider two proposed amendments to the rules and regulations of the complex that would have restricted late-night use of the rooftop area; however, those amendments were never adopted.
Sometime around October 1997, Mr. Alexander contacted a noise control company, which inspected the rooftop area and estimated the cost of corrective measures necessary to alleviate the noise problems at $23,000. During the first several months of 1998, Mr. Alexander claims that he made more complaints to the Henderson Condominium Association concerning excessive noise from the rooftop area. In one of his letters, Mr. Alexander described the noise from the rooftop common area as follows:
Use of the clubhouse or rooftop at night makes it impossible to sleep or rest in my unit. Walking on the rooftop sounds like a bass drum is being played, using the sliding glass doors is similar to a freight train passing by, and the spa pump motors are equivalent to a garbage disposal that is always on. While this is very disturbing at any hour, it is especially dramatic at night when most of the background sound from the city has abated.
At one point, Mr. Alexander claims that he requested that the Henderson Condominium Board impose a restricted-time use rule for the rooftop common area, but the rule was never adopted. In addition to the actions described above, the record contains a number of letters and other correspondence concerning the rooftop noise conditions.
Finally, Mr. Alexander claims, he contacted several prior occupants of unit 301 to determine whether the noise had been a long-standing problem. Mr. Alexander stated in his deposition that at least one of those tenants told him that he had made complaints about rooftop noise.
On July 23, 1998, Mr. Alexander filed a Petition for Damages against 700 Commerce and others, alleging, among other things, claims for nuisance, injunctive relief, fraud, breach of contract, redhibition, and breach of express and implied warranties, including fitness for use and intended purpose. In due course, 700 Commerce filed a Motion for Summary Judgment, seeking dismissal of Mr. Alexander's suit. At a July 9, 1999 hearing on the motions, the trial court issued a judgment granting the motion for summary judgment; the trial judge issued no reasons for judgment. On appeal, Mr. Alexander alleges that the trial court erred in dismissing his claims for breach of contract, bad faith redhibition, and nuisance, as well as his claim under the New Home Warranty Act.
The standard of review on appeal for summary judgments is de novo. Billes/Manning Architects v. Accountemps, Division of Robert Half of Louisiana, Inc., 98-3044 (La.App. 4 Cir. 9/15/99), 742 So.2d 728. A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.C.C.P. art. 966 C(1). Pursuant to the 1996 amendments to La.C.C.P. art. 966, summary judgments are now favored, and the rules regarding such are to be liberally applied. La.C.C.P. art. 966(A)(2). The non-moving party may no longer rely on the allegations in its pleadings in opposing a summary judgment. La.C.C.P. art. 966(C)(2). If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of *632 material fact, and the motion should be granted. La.C.C.P. art. 966 C(2); Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490.
Applying the above standards to the facts of this case, I would reverse the trial court judgment granting summary judgment in favor of 700 Commerce. In support of its motion for summary judgment, 700 Commerce simply pointed to the waiver of warranty provisions in the Purchase Agreement and Act of Sale. While those provisions are arguably sufficient to establish 700 Commerce's initial burden of proof in a summary judgment proceeding, I believe that Mr. Alexander presented sufficient evidence to overcome that burden of proof, when his claims are properly analyzed as below under the correct legal principles. Although I agree with the majority that 700 Commerce is entitled to summary judgment on Mr. Alexander's claims under the New Home Warranty Act, I would nevertheless deny 700 Commerce's motion for summary judgment relative to Mr. Alexander's breach of contract and nuisance claims.

BREACH OF CONTRACT
In its memorandum to the trial court filed in support of its motion, 700 Commerce asserted that it was entitled to summary judgment on Mr. Alexander's "redhibition" claims because both the purchase agreement and the act of sale for the condominium contained "as is" provisions, specifying that the condominium was sold "without any warranty whatsoever." Pointing to La.C.C. art. 2548, 700 Commerce noted that Louisiana law allows parties to a sale to exclude or limit all warranties, so long as the exclusion or limitation meets certain requirements. 700 Commerce argued that the evidence attached to its motion for summary judgment was sufficient to prove that all of the requirements for validly excluding warranties were met in this case. Additionally, 700 Commerce asserted that the one-year prescription period established by La.C.C. art. 2534 for redhibition claims was tolled long before Mr. Alexander filed his suit on July 23, 1998.
However, Mr. Alexander claims that his claim against 700 Commerce falls under the provisions of La.C.C. art. 2524, relative to the implied warranty that the thing sold is "fit for ordinary use." That article, which became effective on January 1, 1995, states as follow:
A thing sold must be reasonably fit for its ordinary use. When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.
If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.
(Emphasis added.) 1993 Revision Comments (b) explains La.C.C. art. 2524 as follows:
Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects.
(Emphasis added.) Since La.C.C. art. 2524 became effective on January 1, 1995, no Louisiana court has specifically addressed this issue of the law applicable to claims that a thing sold is not "fit for ordinary use." However, the above article and comment clearly state that the rules governing breach of contract actions should apply to such cases. Thus, I would find that the redhibition articles, found in Title VII of Book 3 of the Louisiana Civil Code, do not apply to the facts alleged by Mr. Alexander in the instant case. Instead, *633 the conventional obligations articles apply; those articles are found in Title VI of Book 3 of the Louisiana Civil Code, La.C.C. arts. 1906 through 2057.
La.C.C. art. 2031, found within the general articles governing conventional obligations, provides as follows:
A contract is a relative nullity when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
(Emphasis added.) Thus, a contract is considered a relative nullity if grounds for vitiating consent exist.
La.C.C. art. 1948 states that contractual consent may be vitiated "by error, fraud, or duress." Error sufficient to vitiate consent is described by La.C.C. art. 1949 and 1950 as follows:
Art. 1949. Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art. 1950. Error that concerns cause
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
Fraud sufficient to vitiate consent is further described by La.C.C. art. 1953, as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
When a party pleads fraud or mistake, La.C.C.P. art. 856 states that "the circumstances constituting fraud or mistake shall be alleged with particularity."
Mr. Alexander's original petition in the instant case states, in pertinent part, as follow:
Before purchase, plaintiff was told by management, including senior management, that no problems with the unit had been reported.
Plaintiff was the first "owner" of unit 301, but not the first person to live therePlaintiff has received mail addressed to over ten different people. Prior to purchasing his unit, Plaintiff was told by Brenda Borscheck (daughter of developer and manager), Eunice Bergeron (a manager), and Susan Cavanaugh (a manager), that "there had never been a complaint by a previous resident of unit 301." Our investigation reveals that prior tenants had reported noise.
Additionally, Mr. Alexander's Third Amended Petition states, in pertinent part, as follows:
3.
Upon information and belief, during the times complained of, Brenda Borcherdt, Eunice Bergeron, and Susan Cavanaugh worked for defendant developers/sellers/managers/owners, including Historic Restoration Inc. (HRI), and Henderson Condo Association (Henderson). Upon information and belief, all three individuals acted as sales agents in presenting the units to potential customers, preparing documentation, and performing other duties of a real estate agent. Upon information and belief, all three individuals acted as managers actively managing the Henderson apartments before and after their conversion into condos.
4.
On several occasions, between about November 1995 and June 1996, starting after Plaintiffs closing in October 1995, *634 Plaintiff asked each of the following individuals, Brenda Borcherdt, Eunice Bergeron, and Susan Cavanaugh whether there had ever been any noise complaints from previous residents of unit # 301. Plaintiff had begun to experience unreasonable noise coming from the use of the rooftop and clubhouse area shortly after his purchase, and complained about the noise. Each of the above individuals responded to plaintiff on the several occasions that there had never been any noise complaints regarding the use of the rooftop area. All three managers consistently denied to plaintiff there had been noise complaints from previous residents, and such representations were made individually, jointly and severally, in each other's presence and alone.
5.
At all times complained of, defendants knew or should have known: 1) about noise complaints as previous tenant[s] of unit #301 had experienced noise due to usage of the rooftop and had complained to the management; 2) that, prior to the conversion of the unit from an apartment to a condo, there was a policy that the rooftop area was not to be occupied during normal sleeping hours out of courtesy to the third floor residents; and 3) that a 24 hour roof access policy would be instituted after conversion.
6.
At all times complained of, and pleading in the alternative, defendants negligently, recklessly, and fraudulently concealed the noise complaints, prior limited roof top access policy, and the new 24 hour access policy from plaintiff. Had plaintiff been told about the noise complaints and roof top policies he would not have purchased his unit, or would have been put on notice to conduct further inquiry. Defendants' concealment after the purchase further damaged plaintiff in ways and amounts to be shown at trial, including delaying discovery of such concealment.
As the above excerpts show, Mr. Alexander met the requirement that "the circumstances constituting fraud or mistake ... be alleged with particularity."
Moreover, 700 Commerce failed to present any evidence in support of its motion for summary judgment to contradict Mr. Alexander's assertion that representatives of 700 Commerce fraudulently concealed the noise problems from him prior to his purchase. The only evidence attached to 700 Commerce's motion for summary judgment was a copy of Mr. Alexander's petition, a copy of the "Agreement to Purchase and Sale," and excerpts from Mr. Alexander's deposition. That evidence is not sufficient "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense," as required by La.C.C.P. art. 966(C)(2). Thus, 700 Commerce is not entitled to summary judgment on the basis of the exclusion of warranty provision in the purchase agreement and act of sale.
700 Commerce also claims that Mr. Alexander's claims were prescribed prior to the filing of his petition. However, like the argument on the exclusion of warranty provision, the prescription argument is also based on the assumption that the redhibition articles govern this case. Under the provisions of La.C.C. art. 2032, an action to annul a relatively null contract prescribes "five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." Thus, Mr. Alexander's cause of action that the condominium was not "fit for ordinary use" was not prescribed when he filed his suit on July 23, 1998, less than three years after the date he signed the purchase agreement on September 11, 1995. Accordingly, 700 Commerce is not entitled to summary judgment on the basis of the tolling of prescription on Mr. Alexander's *635 claim that the condominium is not "fit for ordinary use." Accordingly, I would reverse the trial court's dismissal of Mr. Alexander's breach of contract claim on summary judgment.

NUISANCE
In its memorandum in support of summary judgment filed in the trial court, 700 Commerce did not specifically address Mr. Alexander's nuisance claims. However, 700 Commerce did argue that all of Mr. Alexander's tort claims had prescribed prior to the filing of his suit. In support of that argument, 700 Commerce cites La. C.C. art. 3492, which establishes a one-year prescriptive period for delictual actions. Citing Mr. Alexander's admission that he first became aware of the noise problems during the first month or so after his purchase of the condominium in October of 1995, 700 Commerce asserts that Mr. Alexander's nuisance claim prescribed, at the latest, in December of 1996. Mr. Alexander's suit was not filed until July 23, 1998.
Nuisance actions are governed in Louisiana by La.C.C. arts. 667 through 669. Under the jurisprudence interpreting those provisions, "noise constitutes a nuisance subject to an action for damages and injunction when the noise is excessive, unreasonable in degree, and of such character as to produce actual physical discomfort and annoyance to a person of ordinary sensibilities." Thornburg v. McMillin, 392 So.2d 1119, 1124 (La.App. 3 Cir.1980), writ denied, 399 So.2d 599 (La.1981).
Although no Louisiana cases address this issue, courts in other states have recognized that a suit filed by condominium owners seeking relief from noise problems qualifies as a nuisance claim. For example, remarkably similar to the instant case is McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 650 N.E.2d 93 (Mass.App.Ct.1995), review denied, 420 Mass. 1107, 652 N.E.2d 146 (Mass.1995), in which the court found that condominium owners could maintain a nuisance action based on noise coming from an air conditioning unit that was inoperative at the time the plaintiffs purchased the unit. Additionally, in another analogous case, Baum v. Coronado Condominium Association, Inc., 376 So.2d 914 (Fla.App. 3d Dist.1979), the court found that condominium owners who complained about noise caused by other tenants walking on an uninsulated and uncovered terrazzo corridor within the lobby located above the plaintiffs' unit were entitled to relief under Florida's nuisance articles.
Nevertheless, 700 Commerce claims that Mr. Alexander's nuisance claim prescribed when he failed to file suit by December of 1996, one year after he admits that he learned of the noise problems. However, in Dwyer v. Smith, 546 So.2d 895 (La.App. 1 Cir.1989), the court applied the "continuing tort" doctrine to a nuisance claim. In Dwyer, the trial court found that the nuisance action filed by the plaintiff in 1986, alleging that her neighbors improperly discharged sewerage onto her property, was prescribed because the plaintiff was aware of the problem prior to 1968. However, the appellate court reversed, stating as follows:
The one-year prescriptive period set forth in LSA-C.C. art. 3493 is applicable when the damages alleged under LSA-C.C. art. 667 are caused to immovable property. Ordinarily the prescriptive period commences to run from the day the owner of the immovable acquired, or should have acquired knowledge of the damage. However, "[w]here the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531, 533 (La. 1982). Since the wrongful acts of the defendants are alleged to be continuing and recurring, the prescriptive period has not yet begun to run.
Id. at 897.
I agree with the court's analysis in Dwyer that a nuisance claim, depending on the circumstances, can qualify as a continuing *636 tort. Once again, I would be informed by a case from Florida, the state widely recognized as having more condominiums than any other. In Putnam v. Roudebush, 352 So.2d 908 (Fla.App. 2d Dist.1977), the court declined to dismiss a nuisance claim filed by a condominium owner alleging noise from an air conditioning system, finding that the defect in the system constituted "a continuing nuisance and a permanent defect." Id. at 910. Although the Putnam court did not consider a statute of limitations (prescription) problem, the case still stands for the proposition that a nuisance claim can constitute a continuous tort.
Once again, my de novo review of the record convinces me that 700 Commerce did not carry its burden of proving entitlement to summary judgment on the nuisance issue. Mr. Alexander claims that the noise damages have been continuing and recurring throughout the time he has lived in the condominium. Moreover, he alleges that 700 Commerce has repeatedly failed to take action to abate the nuisance. On the other hand, neither the memorandum accompanying 700 Commerce's motion for summary judgment nor the attachments to the motion address the continuing nature of the alleged nuisance. Accordingly, I would find that 700 Commerce is not entitled to summary judgment dismissing Mr. Alexander's nuisance claim because it has failed "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense," as required by La.C.C.P. art. 966(C)(2).
Accordingly, I would reverse the trial court judgment granting summary judgment and dismissing Mr. Alexander's breach of contract and nuisance claims.
JONES, J., dissents with reasons assigned by Judge PLOTKIN.