I, MURRAY, J.
Dr. Aizenhawer (Aizen) Marrogi appeals a trial court decision granting summary judgment to the defendants on all claims related to “billing, accounting, and/or payment for professional services [of] and/or compensation” to Dr. Marrogi while he was employed by Tulane University School of Medicine. Because we find that Dr. Marrogi failed to meet his burden of proof under our state’s summary judgment law, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 13, 1997, Dr. Marrogi, a pathologist employed by Tulane University School of Medicine, filed a petition for injunction to require his department chairman, Dr. Michael Gerber, to approve his grant application to the National Institute of Health.[1] On March 19, 1997, the trial court dismissed the injunction proceeding. On April 18, 1997, Dr. Marrogi filed an amended petition for damages against Dr. Gerber, Janette Breaud, the Tulane University Medical Group Faculty Practice Plan, the Administrators of the Tulane Educational Fund d/b/a Tulane University School of Medicine (“Tulane”), and others, alleging, among other things, that the defendants “under reported” Dr. Marrogi’s income under the Faculty Practice Plan (“FPP”).
| ¡/Specifically regarding the allegation of under reported income, Dr. Marrogi’s petition asserted:
The [Faculty Practice Plan] Statements for the year end June 30, 1993, 1994,1995,1996 and for the current year are incorrect for at least the following reasons: ... (c) Marrogi’s income from his medical practice at Lakeland Hospital (“Lakeland”) and Tulane Medical Center is significantly under reported; and (d) the deductions and/or adjustments applied to the reported income generated by Marrogi are inappropriate under the FPP Agreement and are excessive.
*1101 Dr. Marrogi further alleged that some of the defendants breached the FPP Agreement by failing to distribute income to him pursuant to the Agreement, and some breached their fiduciary duty to him by failing to account for income appropriately under the FPP Agreement.
For discovery on the issue of under reported income, Tulane University Hospital and Clinic (“TUHC”) and Lakeland produced, pursuant to court order of July 27, 1997, approximately 2,000 of Dr. Marrogi’s pathology reports from one representative year selected by the trial court. Each surgical pathology report is signed by Dr. Marrogi and typically contains the following sections: Comment, Pre-operative diagnosis, Specimen, Gross description, Microscopic description, and Diagnosis. Information on the services performed is extracted from each pathology report, encoded on a health insurance claim form, and sent to the appropriate insurance company or Medicare/Medicaid. On the claim form, services performed are identified by the appropriate Physicians Current Procedural Terminology (“CPT”) code.[2]
hTo find support for the allegation of under reported income, Dr. Marrogi hired Ray Howard as his expert in billing and coding to review the pathology reports. At his deposition in August 1999, Howard stated that he was hired to review and analyze documents prepared for Dr. Mar-rogi by Bonnie Jackson, a former Tulane employee, as well as the pathology reports, and then to change the coding “as needed.” Howard then applied Tulane’s fee schedule, or pricing information, to the level of service provided in order to calculate the amount of money he believed Tulane should have billed for Dr. Marrogi’s services for the representative year.
Howard acknowledged that Tulane allowed individual doctors to alter the fee schedule, and gave examples of special pricing for certain stains and competitive pricing used by Dr. Marrogi for skin biopsies. Howard indicated that his initial calculations were incorrect because he had not known about these changes. In fact, Howard’s opinion on the total value of Dr. Marrogi’s professional services for the representative year changed four times from May 1998 to August 1999.
At his deposition, Howard admitted that health care providers enter into Medicare/Medicaid contracts by which the insurer pays an “allowable,” or a percentage of what is billed by the provider. Howard stated that he would not recommend to a client that one’s income level be based on the amount billed instead of the amount payable or reimbursable, although apparently Howard based his calculations on the amount he believed Tulane should have billed for Dr. Marrogi’s services.
Howard further stated that Dr. Marrogi may only bill for the services that he personally performed. Howard acknowledged that in analyzing the pathology | ¿reports he did not segregate professional services performed by Dr. Marrogi from services, such as reading a slide, which could have been done by other individuals.
Howard stated that he was not informed of the steps in Tulane’s billing process or the extent of Dr. Marrogi’s involvement in the billing process at Tulane. Howard further acknowledged that he used figures provided by Dr. Marrogi in his calculations.
*1102 As documented by a letter dated August 24, 1999, Howard withdrew from the case before his deposition was completed.
On November 4, 1999, the defendants filed a motion for partial summary judgment, asking the trial court to dismiss Dr. Marrogi’s claim that any defendant under billed or under reported his income for services he performed at TUHC and Lake-land. The defendants asserted that Dr. Marrogi “has not and can not show that defendants improperly billed or accounted for [his] professional services.”
In support of their motion for summary judgment, the defendants submitted Howard’s deposition to refute the only evidence they claimed Dr. Marrogi had provided on the issue of improper billing— affidavits and reports from Howard and Dr. Marrogi. The defendants claimed that Howard’s deposition revealed that his earlier reports were inaccurate and his analysis was unscientific and unreliable. Specifically, in their statement of uncontested facts submitted with the summary judgment motion, the defendants asserted that Howard’s reports “are based on miscalculations, misapplications of pricing lists, miscoding of pathology reports and inaccurate information.”
Also in support of their motion for summary judgment, the defendants submitted affidavits from Ted Berggren, the director of the FPP financial services office, and defendant Janette Breaud, department administrator for Tulane’s | .^Department of Pathology. In his affidavit, Berggren stated that “other than those services billed by the Department of Pathology, Dr. Marro-gi’s professional services at TUHC [and Lakeland] were billed and collected by the [FPP] in accordance with Tulane’s standard practices and procedures.” Berg-gren further stated:
7.All FPP-generated reports and accounting documents produced by this office were prepared according to the usual and customary practices of the Tulane Faculty Practice Plan.
8. The Tulane [FPP] did not at any time “under report” Dr. Marrogi’s clinical income.
9. There were no attempts by the Tulane [FPP] or anyone employed by Tulane to systematically “under bill” for Dr. Marrogi’s clinical services.
In her affidavit, Breaud stated in part:
4. During certain periods of time the Department of Pathology has billed for pathologists’ clinical services.
5. The billing and collection practices were the same for all pathologists.
6. The price lists were the same for all pathologists. However, each pathologist had the right to modify their pricing schedule with Department approval.
7. Dr. Marrogi’s clinical services were billed according to Department price lists with some modifications as made by Dr. Marrogi.
8. Throughout my tenure as Department Administrator, I have received and reconciled accounting reports from the [FPP] which relate to the clinical services of Tulane pathologists.
9. All reports and accounting documents produced by the Department of Pathology were based on information received from the [FPP] or the Department of Pathology billing staff and were prepared according to the usual and customary practices of the Department of Pathology.
10. The Tulane Department of Pathology did not at any time “under report” Dr. Marrogi’s clinical income.
11. There were no attempts by the Tulane Department of Pathology or anyone employed by Tulane to sys *1103 tematically “under bill” for Dr. Marrogi’s clinical services.
| ^Acknowledging that Howard had made errors and that he would no longer use Howard in this case, Dr. Marrogi filed a memorandum in opposition to the motion for summary judgment, claiming that his new experts had not been able to complete their review of the documents supporting his claim because he had not obtained Howard’s files until early November 1999. Nevertheless, Dr. Marrogi submitted an affidavit from the new experts, Lome Hall and Barbara Hawkins, management health care consultants with nursing backgrounds, reporting on 82 of the 2000 pathology reports.
In their affidavit, Hall and Hawkins stated that they had not reviewed any of Howard’s reports; that they were currently reviewing Dr. Marrogi’s pathology reports and anticipated a complete report on or before December 29, 1999; that they had so far matched 82 pathology reports with the correct insurance claim form and had found 16 “billing discrepancies” — pathology services documented in the pathology report but not billed on the claim form — on 13 of the 82 pathology reports; but that the 82 reports had not been reviewed to determine proper coding or pricing, although this information would be provided in the complete report. Attached to the affidavit were Curriculum Vitaes for Hall and Hawkins and the pathology reports and claim forms in which Hall and Hawkins found discrepancies.
Claiming that he had provided evidence that the defendants inappropriately billed for his services, Dr. Marrogi asked the trial court to deny the summary judgment motion, or at least to grant a continuance while awaiting a report from the new experts. On November 19, 1999, after a hearing, the trial court granted the defendants’ motion for summary judgment “on all claims related to, associated with, or arising from, billing, accounting and/or payment for professional services |7[of] and/or compensation [to]” Dr. Marrogi while he was employed by Tulane. In granting the motion for summary judgment, the trial court stated:
... the court is well aware of all of the factual situations involved in this case with regards to all the issues in this case. I have heard numerous motions for contempt, I’ve heard numerous motions to compel on the numerous documents ... apparently associated with the billing process ... [and] Dr. Marro-gi over the period of time that he was employed by Tulane Medical Center and in some respect services that were billed as it relates to the Lakeland Hospital.
Documents apparently have been transferred, reorganized, renumbered, regrouped, ... and today before the court is a motion for summary judgment with regards to whether or not the plaintiffs have brought forth sufficient evidence to support Dr. Marrogi’s claims for additional wages that were due to him by Tulane Medical Center for its failure to either bill [correctly] ... or not bill at all for services that he rendered to Tulane and/or Lakeland Medical Center.
The court finds that the evidence presented by the defendants ... indicates that Dr. Marrogi was in fact paid for services and that some services that he is claiming compensation for were not billable by Tulane as a pathology service. The court finds that the testimony and evidence brought forth by the plaintiff is insufficient to defeat the motion for summary judgment[.][T]he court will note that this case has been proceeding for more than two years with regard to the same faet[,] that each party has had an opportunity to name its experts to *1104 review all of the doeuments[,] and the court has done extensive status conference[s], motion to compel hearings in order to make sure that each side got the appropriate documentation needed to prosecute its case.
... I do not find that the plaintiffs have brought forth sufficient [evidence] to defeat the motion for summary judgment and there[fore] grant in favor of Tulane Medical Center.
On November 30, 1999, Dr. Marrogi filed a motion for new trial, claiming that the trial court’s ruling granting the defendants’ motion for summary judgment was contrary to the law and evidence. In support of his motion for new trial, Dr. Marro-gi submitted a new affidavit from Hall and Hawkins, similar to their first affidavit, but adding that they had reviewed Tulane’s fee schedule “for billing the services rendered in Dr. Marrogi’s pathology reports;” after reviewing the pathology reports, the claim forms, and the fee schedule, they found 25 “billing | sdiscrepancies”-pathology services documented on the pathology report but not billed or not billed appropriately on the claim form-on 11 pathology reports; and that according to Tulane’s fee schedule, the billing discrepancies “should have been billed on the claim form.”
To his motion for new trial, Dr. Marrogi attached the referenced pathology reports and claim forms, Tulane’s fee schedule, a November 17,1999 report prepared by Hall and Hawkins listing the alleged billing discrepancies found prior to the summary judgment motion, and a November 24,1999 report prepared by Hall and Hawkins listing the new alleged billing discrepancies found prior to the motion for new trial and including information from Tulane’s fee schedule.
After a hearing on January 14, 2000, the trial court denied Dr. Marrogi’s motion for new trial on February 7, 2000, stating in part:
IT IS HEREBY ORDERED that the Motion for New Trial is DENIED. This Court hereby affirms its prior Order granting defendants’ Motion for Summary Judgment on all claims related to, associated with, or arising from, billing, accounting and/or payment for professional services and/or compensation while [Dr. Marrogi was] employed by [Tulane].
Dr. Marrogi appeals this judgment, which affirmed the partial summary judgment previously granted.
DISCUSSION OF LAW AND ANALYSIS
La.Code Civ.P. art.1972 provides that a new trial shall be granted in the following pertinent eases:
(1) When the judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
[cA grant of a new trial is within the trial court’s discretion. Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181, 1183.
The second scenario listed above does not apply in this case. Although Dr. Marrogi attempted to address the trial court’s reason for granting summary judgment by having Hall and Hawkins include information from Tulane’s fee schedule in their review of the pathology reports and insurance claim forms, this information was in Dr. Marrogi’s possession well before the summary judgment hearing. In fact, Dr. Marrogi’s previous expert, Howard, used Tulane’s fee schedule in his analysis. Dr. Marrogi’s claimed inability to retrieve Howard’s reports until early No *1105 vember 1999, even if the fee schedule was included in the reports, was merely another delay tactic employed by Dr. Marrogi in this lengthy, protracted discovery phase of the litigation.
At the hearing on the motion for new trial, the trial court stated;
The evidence that’s been presented by Dr. Marrogi I do not think rises to the level to defeat the motion for summary judgment. And I ruled that way a couple of months ago.
Then we get here today. I don’t have any new evidence that’s been offered to defeat that.
[[Image here]]
Under the law, under the Code of Civil Procedure addressing a new trial, I do not find that your motion for new trial rises to any level. I’m going to deny the motion for new trial.
The trial court correctly observed that Dr. Marrogi failed to present any new evidence in his motion for new trial. Furthermore, contrary to Dr. Marrogi’s contention in his motion for new trial, the earlier grant of summary judgment was not contrary to the law and the evidence, as explained below.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812, 814; Billes/Manning Architects v. Accountemps, Division of Robert Half of Louisiana, Inc., 98-3044 (La.App. 4 Cir. 9/15/99), 742 So.2d 728, 731. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Pursuant to the 1996 amendments to article 966, summary judgments are now favored, and the rules regarding summary judgments are to be liberally applied. La.Code Civ.P. art. 966(A)(2). The amendments leveled the playing field for the litigants, required equal scrutiny of documentation submitted by the parties, and removed the earlier overriding presumption in favor of trial on the merits. Rogers v. Horseshoe Entertainment, 32,800 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 599, units denied, 00-2894 and 00-2905 (La.12/8/00), 776 So.2d 463 and 464.
In 1997, article 966 was further amended to alter the burden of proof in summary judgment proceedings. The initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if, as in the instant case, the movant will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
In After the movant has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ.P. art. 966(C)(2); Smith v. General Motors Corp., 31-258 (La.App. 2 Cir. 12/9/98), 722 So.2d 348, 351. If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La.Code Civ.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 *1106 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. Code Civ.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
Louisiana law allows a trial court to grant a partial summary judgment when it disposes of a particular issue, theory of recovery, or defense, in favor of one or more parties, though not the entire case. La.Code Civ.P. art. 966(E). Jefferson v. Chevron U.S.A. Inc., 97-2436 (La.App. 4 Cir. 5/20/98), 713 So.2d 785, 789, writ denied, 98-1681 (La.10/16/98), 727 So.2d 441.
Applying the above standards to the facts of this case, we agree with the trial court’s decision to grant a partial summary judgment in favor of the defendants. In what is basically a breach of contract issue, Dr. Marrogi sued the defendants, alleging that they breached the FPP agreement by not compensating him in accordance with the terms of that agreement. Therefore, critical to Dr. Marrogi’s case is whether the defendants failed to pay him what he was entitled to pursuant to the agreement.
|12In his first assignment of error, Dr. Marrogi argues that the defendants did not submit competent evidence to support their motion for summary judgment. Dr. Marrogi claims that since the trial judge stated during the hearing on the motion for new trial that she had not relied upon Howard’s deposition, the deposition did not support the defendant’s motion for summary judgment. The trial court’s after-the-fact statement that she disregarded a particular item of evidence, however, does not render the item of evidence worthless.
The trial court was very familiar with and knowledgeable about this case and did not need to refer to Howard’s deposition testimony to understand the facts of the case. Moreover, the deposition was basically worthless in providing an accurate calculation of what Dr. Marrogi claimed Tulane owed to him. Yet, in our de novo review of the summary judgment, we have found parts of Howard’s deposition testimony to be helpful because he explained concepts such as CPT coding, described how he identified services performed from the pathology report and altered or added codes on the insurance claim form, and acknowledged that some services described on a pathology report may not be, for various legitimate reasons, billed on the claim form for Dr. Marrogi’s services. Significantly, Howard’s deposition testimony indicated to us that although there may be “billing discrepancies” contained within the documents produced, these “discrepancies” do not prove that the defendants under billed for Dr. Marrogi’s services or compensated him less than he was entitled to under the FPP.
In sum, Dr. Marrogi’s claim that Howard’s deposition does not support the grant of summary judgment is without merit.
Dr. Marrogi further claims that the affidavits of Berggren and Breaud provide insufficient support for the grant of summary judgment. Dr. Marrogi | ^claims that because neither Berggren nor Breaud specifically stated that they had reviewed Dr. Marrogi’s billing records, neither had personal knowledge of whether billing irregularities were present in those records. Dr. Marrogi argues that these affidavits do not resolve what he believes is the ultimate factual issue of the motion for summary judgment — that no billing irregularities occurred regarding Dr. Marrogi’s services.
*1107 Personal knowledge is required in an affidavit used to support a motion for summary judgment. La.Code Civ.P. art. 967. In Richardson on behalf of Brown v. Lagniappe Hospital Corp., 33,378 (La.App. 2 Cir. 5/15/00), 764 So.2d 1094, 1099, the court stated:
La. C.C.P. art. 967 provides that affidavits supporting or opposing summary judgment shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Pugh v. Beach, 31,361 (La.App. 2d Cir.12/11/98), 722 So.2d 442; Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. Personal knowledge means something which the witness actually saw or heard as distinguished from something he learned from some other person or source. Gardner v. Louisiana State University Medical Center in Shreveport, supra.
Because Berggren and Breaud manage the departments which, the parties agree, handle billing and accounting for pathology services, their affidavits are based upon their personal knowledge of the defendants’ billing practices. These affidavits do not contain information learned from someone other than the affi-ant. The personal knowledge element does not require an affiant to re-examine documents their departments have already reviewed or prepared in the ordinary course of business. If Dr. Marrogi wanted an explanation about the defendants’ billing in general or about the billing in any particular instance, he could have deposed Berggren or Breaud, or conducted other methods of discovery.
114It is not “billing discrepancies,” but whether Dr. Marrogi was properly compensated, which is the crux of this case. Not only do we find that these affidavits were based on personal knowledge, but we also find that these affidavits, along with Howard’s deposition, point out an absence of support for an essential element of Dr. Marrogi’s claim — that the defendants failed to compensate Dr. Marrogi for his services in accordance with the FPP agreement. Hence, the burden then shifted to Dr. Marrogi to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden at trial.
In his second assignment of error, Dr. Marrogi argues that the trial court erred in finding that he did not submit sufficient evidence to raise material factual issues and thereby defeat summary judgment. Dr. Marrogi claims that the affidavits by Hill and Hawkins constituted credible evidence on the issue of billing irregularities and raised material factual issues sufficient to defeat summary judgment.
At the hearing on the motion for summary judgment, the trial court stated:
... the law says that when the mover brings forth his evidence and puts it on[,] there’s no general issue of material facts[, and] the party who bears the burden of proof at the trial must bring forth evidence to defeat it and if you don’t it’s over and done with.
Now, I looked at this affidavit [Hall and Hawkins’ original affidavit] and as I see this affidavit it says that there are things that are not clear. [Defense counsel] raises a significant point here, if there are codal (sic) things that they can not be billed for[,] Dr. Marrogi wouldn’t be entitled to be paid for it anyway. You have to present evidence to this court that just because it was not billed that he is somehow entitled to compensation for that ...
*1108 * * *
... you have to today put forth evidence to this court that Dr. Marrogi would have been entitled to those fees and this affidavit doesn’t do it for me, I do not see it.
| ^Considering Howard’s testimony that Tulane had special or competitive pricing for certain items, that some insurance contracts pay an “allowable” instead of the billed amount, and that a particular report may contain reference to a service provided by someone other than the doctor who signs the report, the failure of Hall and Hawkins, in response to the motion for summary judgment, to take into account these reasonable scenarios was a fatal flaw. Simply stating that they found “billing discrepancies” between the pathology reports and the claim forms with no attempt to show that Dr. Marrogi would have been entitled to compensation on these discrepancies, does not carry Dr. Marrogi’s burden of proof.[3]
The evidence presented by Dr. Marrogi in response to the motion for summary judgment simply is not sufficient to defeat the defendants’ properly supported motion for summary judgment.
With a properly supported motion for summary judgment and with Dr. Marrogi’s failure to present sufficient evidence to defeat the motion for summary judgment once the burden shifted to him, the grant of summary judgment was clearly in keeping with the law and the evidence. Hence, there was no basis to grant a new trial, and the trial judge acted within her discretion in denying Dr. Marrogi’s request for a new trial.
In his third assignment of error, Dr. Marrogi argues that the trial court erred by improperly weighing evidence submitted by the parties. Dr. Marrogi claims l^that the trial court assessed witness credibility when she stated at the hearing on the motion for new trial:
... when you [Dr. Marrogi’s counsel] said you have offered proof to the Court, I’ve got these affidavits that say there’s some discrepancies in the billing, they were not billed appropriately. Then I go back and I look. In addition to the bills and the attachments from the pathology reports, you attach the curriculum vitae of both Miss Hall and Miss Hawkins. I went through them. One thing is they’re nurses and they run a company called Virginia Health Care Consultants. And what they say they do is they provide management consulting for healthcare providers, including business development, strategic planning, financial and operational assessments, serving as change agent to implement improved operational systems, medical-legal reviews, and continuing education. Again, part of their vitae includes education, their training, and it also includes information on presentations that they each have made. And I went through that, too, and I only found one.
When we’re talking about the affidavits, Mr. Berggreen works with this stuff everyday. Miss Hawkins and Miss Hall are called in to take a look at *1109 something and say whether or not there’s billing discrepancies.
Initially we note that although the trial court is not permitted to assess credibility on a motion for summary judgment, see Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226, 236, the complained-of statement was not made by the trial court at the summary judgment hearing, but rather at the hearing on the motion for new trial. Moreover, the trial court’s statement was not a credibility assessment. The trial court was not accepting Berggren’s testimony over that of Hall and Hawkins; rather, the trial court was questioning the admissibility of Hall and Hawkins’ affidavits.
In its Independent Fire decision, the Louisiana Supreme Court confirmed that affidavits from experts are allowed on summary judgment motions. In doing so, the supreme court reinforced several underlying principles, the most important being that a summary judgment motion should be denied,
|17if a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert’s opinion on a material fact more likely than not is true
[[Image here]]
755 So.2d at 236.
In the instant case, presumably because the defendants did not actually challenge the legitimacy of the methodology utilized by Hall and Hawkins, the trial court did not conduct a Daubert-Foret analysis. See Blank v. Sid Richardson Carbon & Gasoline Company, et al., 00-1025 (La.6/2/00), 762 So.2d 1115. Nonetheless, the Independent Fire decision implies that an expert affidavit must still comply with “other applicable evidentiary rules” to support or defeat summary judgment. One such rule wouid be La.Code Evid. art. 702 which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, (emphasis added)
The trial court, in our opinion, at the motion for new trial, was indicating that the Hall and Hawkins affidavit would not be admissible even if Dr. Marrogi’s motion for new trial had merit.
Dr. Marrogi further argues that the trial court created an unfair standard by indicating that a party’s business records could never be refuted by an expert because the party would always be more familiar with its own records. This is not a valid interpretation of the trial court’s statement. Rather, the trial court was saying that these particular “experts” were not qualified by knowledge, skill experience, training, or education, to testify about pathology billing practices.
hsWe find that Dr. Marrogi’s assignment of error claiming that the trial court im-permissibly assessed credibility of witnesses has no merit.
CONCLUSION
Accordingly, the trial court judgment denying Dr. Marrogi’s motion for new trial and affirming the defendants’ motion for partial summary judgment is affirmed. All costs of this appeal are assessed to Dr. Marrogi.
AFFIRMED.

. Dr. Gerber died sometime after this suit was filed.

. Although the record is unclear as to who is responsible for extracting information from the pathology report to encode on the claim form, we note that each pathology report appears to have a CPT code instruction noted at the end of each report.

. We doubt that our decision would be any different had Hall and Hawkins inserted Tulane’s fee schedule information at the motion for summary judgment instead of the motion for new trial. Although a more plausible strategy, Hall and Hawkins nevertheless still did not provide evidence that Dr. Marrogi would have been entitled to additional fees. By merely staling that according to the Tulane fee schedule, the "billing discrepancies” should have been billed on the insurance claim form. Hall and Hawkins did not prove the existence of a factual question on whether the defendants correctly compensated Dr. Marrogi for his services under the FPP.