| PATRICIA RIVET MURRAY, Judge.
In this class action, the plaintiff, Samuel Parry, M.D., on behalf of a certified class (the “Class”), seeks review of the trial court’s judgment granting partial summary judgment in favor of the defendant, The Administrators of the Tulane Educational Fund d/b/a Tulane Medical School (“Tulane”). The trial court concluded that this action, although styled a breach of contract and fiduciary duty action, is one seeking to recover compensation for services rendered governed by the three-year prescriptive period under La. C.C. art. 3494(1). The Class challenges that conclusion, contending that this is some other type of contractual action governed by the ten-year prescriptive period under La. C.C. art. 3499. Based on our de novo review, we affirm the trial court’s finding that the three-year period under La. C.C. art. 3494(1) applies.

FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 1997, Dr. Parry filed a “Petition for Class Certification, Specific Performance, and Damages” against Tulane. In his petition, Dr. Parry sought to represent a class of over four hundred individuals, which he defined as:
All participants in the Tulane University Medical Group Faculty Practice Plan (the “FPP”) who performed any professional activities at | ¡.Charity Hospital and Medical Center of Louisiana at New Orleans (“Charity”) from July 1, 1987 through June 30, 1997 (hereinafter referred to as “FPP Participants” or “Class Members”) (emphasis supplied).
The petition alleges the following relevant facts:
• In 1975, the FPP was created as a “cooperative venture” between Tulane and its clinical faculty, who are the “participants.”[1]
• Dr. Parry has been a participant for over ten years.
• The FPP “cooperative venture” is evidenced by the “FPP Agreement.”
• The FPP Agreement sets up a practice plan for each participant, which allows the physician-participant to practice medicine and obligates Tulane to bill for and account to the physician for his income generated *32 from professional services or activities.
• The FPP Agreement includes provisions that: (a) credit all income derived from a participant’s medical practice to that participant; (b) categorize the participant’s income by source of generation; (c) allocate deductions (by percentages) to participant’s income; (d) distribute the deductions; and (e) pay a base salary and supplemental income.
• The FPP Agreement provides that supplemental income shall be paid to each participant and defines supplemental income as each participant’s net practice income, plus amounts from school sources, less base salary and benefits.
• The FPP Agreement provides that “all professional income [of the participants] will go to the FPP” and “all money derived from professional activities of the [participants] ... shall be included and credited to the [participants].”
• Dr. Parry and the Class Members have performed professional activities at Charity for which Tulane has received money, yet Tulane claims that “Charity billing [of the participants] is not part of the FPP, nor is the income.”
The petition asserts that the Class Members share the following two common questions of law and fact:
(1) Whether the FPP agreement ... requires all money received by defendant in return for the professional activities each Class Member performs at Charity to be included and credited by the defendant to each Class member in their FPP Agreement professional income calculation; and
(2) What amount of money was received by defendant for each Class Member’s professional activities performed at Charity.
| «Following a hearing, the trial court certified the following class:
All participants in the Tulane University Medical Group faculty Practice Plan during the period July 1, 1987 to June 80, 1997 who performed any professional activities or services at Charity Hospital and Medical Center of Louisiana at New Orleans or Charity Hospital of Louisiana at New Orleans. (Emphasis supplied).[2]
In a divided decision, this court upheld the trial court’s decision certifying the class; likewise, by a split vote, the Louisiana Supreme Court denied Tulane’s writ application. Parry v. Administrators of Tulane Educational Fund, 98-2125 (La.App. 4 Cir. 6/30/99), 740 So.2d 210, writ denied 99-2297 (La.11/12/99), 750 So.2d 197.
In our earlier decision on the certification issue, we outlined the factual background to this class action as follows:
Tulane’s full-time physicians participate in the Tulane University Medical Group Faculty Practice Plan (FPP), a division of Tulane Medical School that bills, collects and distributes the professional income generated by the private practice of the faculty physicians. Pursuant to *33 the FPP Agreement, the physician is guaranteed a base salary that is paid from “School source” funds and FPP sources. The faculty physician also has the opportunity to earn supplemental income from “FPP sources” through his private practice....
The Tulane faculty physicians perform several services at Charity: they supervise the medical care rendered by interns and residents, they serve in hospital administrative positions; and they render direct patient care....
Plaintiff [Dr. Parry], a plastic surgeon and former Tulane faculty member, taught from July 1, 1986 until October 15, 1997. While employed as a full-time faculty physician in the Department of Surgery, he was an FPP participant. Plaintiff filed suit after he discovered that revenues Tulane received for medical services he had performed at Charity had not been included in his group practice compensation-an alleged violation of both his contract and the GFPP.
_]^98-2125 at pp. 1-2, 740 So.2d at 211.
Dr. Parry claims that he first discovered that Tulane was not tunneling the revenues it collected for his services at Charity through the FPP in April 1997. At the certification hearing, “[Dr. Parry] testified that in April 1997 he first suspected he may not have been compensated for his Charity services after reading a newspaper article that stated Dr. Aizenhawar J. Mar-rogi, a friend of his, had filed suit against Tulane alleging that revenues from Charity were not accounted for in the FPP.” 98-2125 at p. 4, 740 So.2d at 214 (Landrieu, J., dissenting).
Dr. Parry claims that the FPP Agreement clearly requires that all professional income, including that earned at Charity, be included in the FPP. The money in dispute in this case is referred to as the “Charity Money.” In his petition, Dr. Parry references (and incorporates as an exhibit thereto) a letter from Tulane’s associate general counsel regarding Dr. Mar-rogi’s lawsuit, that states: “Charity billing is not part of FPP, nor is the income.” Based on Tulane’s admission in that letter that it has failed to include the Charity Money in the FPP calculations, the petition seeks specific performance or, in the alternative, damages for breach of Tulane’s contractual and fiduciary duty. The latter claim is based on Tulane’s alleged status as each Class Member’s agent under the FPP Agreement. The relief prayed for in the petition is either a judgment compelling “Tulane to specifically perform its obligation under the FPP Agreement by including in each Class Member’s professional income calculation all the monies it received as a result of each Class Member’s professional activities performed at Charity” or a money judgment “awarding each member damages for his or her unpaid income.”
|BIn answering the petition, Tulane asserted that the Class Members “received proper income and have been properly paid pursuant to its contracts with the individual faculty members, including the FPP Agreement, the Faculty Salary Schedule and Contract(s), the Affiliated Services Billing Agreement(s), and any other related agreements with Tulane.” Tulane also asserted in its answer an exception of prescription based on La. C.C. art. 3494(1), which specifies that a claimant has a three-year prescriptive period to file “[a]n action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.”[3]
*34 Seeking to resolve the issue of the applicable prescriptive period, Tulane filed a motion for partial summary judgment.[4] Solely for purposes of its motion | fifor partial summary judgment, Tulane agreed to assume that “plaintiffs’ position is correct that the FPP Agreement applies to work performed at Charity Hospital.” Granting Tulane’s motion, the trial court characterized the Class’ claim as one for compensation for services rendered under La. C.C. art. 3494(1). Given the significant impact that decision will have on the scope of the claims and claimants, the trial court designated that decision as a final judgment pursuant to La. C.C.P. art. 1915. This appeal followed.

ANALYSIS

The jurisprudence is well settled that appellate courts review judgments granting summary judgment de novo. See Shelton v. Standard/700 Associates, 2001-0587, p. 5 (La.10/16/01), 798 So.2d 60, 64-65; Doerr v. Mobil Oil Corp., 2000-0947, p. 27 (La.12/19/00), 774 So.2d 119, 136; Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Louisiana law authorizes a trial court to grant a partial summary judgment “dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case.” La. C.C.P. art. 966(E). The trial court granted such a partial sum *35 mary judgment in this case, resolving the particular issue of the applicable prescriptive period.
The sole issue presented is whether this is an action for compensation for services rendered under La. C.C. art. 3494(1), as Tulane contends and the trial court concluded, or some other type of contractual claim under Article 3499, as the Class contends.
|7In determining the applicable prescriptive period, we are guided by the well-settled principle that “[t]he character of an action disclosed in the pleadings determines the prescriptive period applicable to that action.” Sterns v. Emmons, 538 So.2d 275, 277 (La.1989) (collecting cases). As outlined above, the relief sought by the Class’ petition is either specific performance or damages as a result of Tulane’s alleged breach of its contractual and fiduciary duties under the FPP Agreement to include the Charity Money in the FPP professional income calculation. The damages sought are defined in the petition as payment of the Class Member’s “unpaid income.” We conclude that the substance of the relief the Class seeks is additional compensation for services rendered. Such a claim is within the scope of the actions enumerated in La. C.C. art. 3494(1) for compensation for services rendered, which expressly includes salaries, wages, commissions, tuition fees, and professional fees.
Seeking to avoid the application of the three-year period under La. C.C. art. 3494(1), the Class argues that its petition does not state either a claim for salaries or wages or a claim to recover compensation for services rendered to Tulane. Instead, the Class contends that its petition states a claim for allocation of professional fees already collected (the Charity Money) by Tulane as the administrator of the FPP, a joint venture (or partnership).
Citing Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958), and Duer and Taylor v. Blanchard, Walker, O’Quin and Roberts, 354 So.2d 192 (La.1978), the Class contends that the Louisiana Supreme Court has twice decided under factually analogous contractual relationships that a ten-year, not a three-year, |sprescriptive period applies.[5] Marek and Duer, the Class contends, stand for the proposition that a distinction can be drawn between a claim to collect a professional fee from a doctor’s patient or an attorney’s client, which is subject to a three-year period, and a claim against an administrator for distribution of a fund created by the collection of such professional fees, which is subject to a ten-year prescriptive period. The Class contends that this case falls within the latter category, and consequently is governed by a ten-year prescriptive period.
Marek involved a physician who sued to recover damages as a result of the defendants breach of an agreement to give him a ten percent interest in a future medical partnership. The defendants responded with an exception of prescription based on the three-year period under former La. C.C. art. 3538 for actions by “physicians, surgeons and apothecaries for visits, operations and medicines.” The defendants cited a litany of cases standing for the proposition that a claim for professional services, regardless against whom it is asserted, is governed by the three-year period. Finding those cases inapposite, the Louisiana Supreme Court reasoned:
*36 In each of them the bill for the services rendered by the physician or the attorney had not been paid and the suit was for the recovery of the bill. Here, the plaintiff is not suing to recover the fees charged by the Browne-McHardy Group for the services he rendered to the patients of the clinic. On the contrary, his suit is one for damages sustained by defendants’ breach of contract under which he claims the right to have participated in a partnership fund which resulted from the payment of the fees by the patients of the Browne-McHardy Clinic. The applicable prescription is not three years but that of ten years provided by Article 3544 of the Civil Code in personal actions, ex contractu.
284 La. at 850-51, 101 So.2d at 692.
[¿Twenty-years later in Duer the Court applied similar reasoning to resolve the certified question before it of “whether or not [former] Louisiana Civil Code Art. 3538 prescribes an action by one attorney against another for a share in a fee collected more than three years before the action was brought.” 354 So.2d at 194.[6] The Court found dispositive the character of the action between the parties, which it found to be that of joint venturers or special partners, reasoning: “[w]here an attorney retained in a case employs or procures the employment of another attorney to assist him, as regards the division of the fee, the agreement constitutes a joint adventure or special partnership. McCann v. Todd, 203 La. 631,14 So.2d 469 (1943).” 354 So.2d at 194-95.
The Louisiana Supreme Court in Duer further reasoned that the interest claimed under such a fee-sharing agreement is “the right to participate in the fund resulting from the payment of the fee by the client.” 354 So.2d at 195. The Court noted that the suit is not one seeking recovery of attorney’s fees, but one seeking damages “for breach of the agreement to share in the fund resulting from the payment of the fee.” 354 So.2d at 195. The Court noted that the interest in Marek was “the right to participate in a partnership fund which resulted from the payment of fees by the patients of the defendants’ clinic” and found Marek was indistinguishable, stating: “[w]e do not consider an action by an attorney for a share in a single fee distinguishable from the action brought by the plaintiff in Marek in which he claimed the right to participate in a partnership fund resulting from the payment of several fees.” Id.
The Class’ reliance on Marek and Duer is misplaced, legally and factually.
■ hpLegally, this case is distinguishable in that it involves an analysis of the applicability of a different prescription provision. Unlike Marek and Duer which involved a determination of whether former La. C.C. art. 3538’s special three-year period for claims by doctors and attorney’s for professional fees (medical and attorney’s fees) applied, this case involves a determination of whether La. C.C. art. 3494(l)’s three-year period for compensation claims applies.
Although the Class seeks to equate former La. C.C. art. 3538, at issue in Marek and Duer, with the present three-year prescriptive period of La. C.C. art. 3494(1), we find several problems with that approach.
' Civil Code Article 3494(1) was enacted as part of the 1983 legislative revision of the liberative prescription provisions. As noted, this provision specifies a three-year *37 prescriptive period for actions seeking “recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.” La. C.C. art. 3494(1). Comment (a) of this Article states that it is based on former Articles 3534 and 3538 of the Louisiana Civil Code of 1870, which provided one-year and three-year periods, respectively, for an array of actions. By enacting La. C.C. art. 3494, the Legislature “ereate[d] a simplified three-year prescriptive period to replace an ad hoc, archaic assortment of prescriptive periods which existed under articles 3534 and 3538 of the 1870 Code.” Patrick D. Gallaugher, Jr., Comment, Revision of the Civil Code Provisions on Liberative Prescription, 60 Tul. L.Rev. 379, 394 (1985) (“Comment ”).
| n Construing those former articles, former Justice (then Judge) Lemmon observed that they provided an antiquated array of provisions that established one and three year periods depending on the type of services provided and “obviously needfed] legislative updating and clarification.” Salvatore v. Covenant Broadcasting Corp. of Louisiana, 359 So.2d 325, 327 (La.App. 4th Cir.1978). Observing that these prior articles provided no general rule for wage and salary claims, Judge Lemmon reasoned that “[tjhese special exceptions [in former Articles 3534 and 3538] should be strictly construed, and when such an exception is not expressly and clearly applicable to a particular claim, the exception should yield to the general [ten-year] rule.” 359 So.2d at 327. Unlike those prior articles, La. C.C. art. 3494(1) provides a general three-year rule for compensation claims and includes within its scope claims for payment of salaries, wages, commissions, tuition fees, and professional fees.
Another significant problem regarding the prior prescription articles was that they “did not apply to actions based on vrritten contracts.” Comment, supra at 394; Tillman v. New Orleans Saints Football Club, 265 So.2d 284, 286 (La.App. 4th Cir.1972), Scallan v. Mark Petroleum Corp., 303 So.2d 498 (La.App. 2d Cir.1974). “[Although article 3534 of the 1870 Code spoke of a one-year prescription applicable to “workmen, laborers and servants, for the payment of their wages,’ this language has been interpreted not to apply to employees under ‘salaried contract,’ which are considered to be written contracts and governed by the prescription of ten years.” Comment, supra at 394. The enactment of La. C.C. art. 3494(1) changed the law. Unlike the prior provisions that exempted from the shorter (one and three year) prescriptive periods claims arising out of written contractual arrangements for employment compensation, La. C.C. art. 3494(1) 1 ^covers such claims. Wonycott v. Southern, Business Machines, Inc., 595 So.2d 723, 724-25 (La.App. 5th Cir.1992) (finding claim for compensation in form of either corporate stock or cash for commission earned was within three-year period); D’Spain v. D’Spain, 527 So.2d 309, 318 (La.App. 5th Cir.1988) (holding three-year period applicable to a claim for past compensation under a written contract to provide executive financial management services). Given that La. C.C. art. 3494 changed the law, Marek and Duer are legally distinguishable.
This case is also factually distinguishable from Duer and Marek, which both involved partnership or joint venture relationships. This case centers on the FPP Agreement, which by its own terms is a “cooperative” faculty group practice agreement. A “cooperative” is an “association organized for the purpose of rendering economic services, without gain to itself, to sharehold *38 ers or members who own and control it.” Black’s Law Dictionary (5th ed.1970).
A joint venture, in contrast, is defined as resulting from “the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of partnership.” Villarrubia v. Roy, 162 So.2d 86, 89 (La.App. 4th Cir.1964). Similarly, a partnership is “a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial profit.” La. C.C. art. 801. Comment (d) to that Article states:
The partnership is an entrepreneurial association and, as such, all partners have ... the responsibility to share the risk among themselves. The phrase “at mutual risk” reflects this concept.
Although certain other contracts, such as ... employment contracts, resemble the contract of partnership, the risk element |13of the partnership contract is one factor that distinguishes it from those other types.
La. C.C. art. 2801, Official Comment (d).
Applying those principles, the FPP Agreement creates neither a joint venture, nor a partnership between Tulane (a nonprofit institution) and the FPP Participants (the individual Class Members) for several reasons.
First, the FPP Agreement is only one of several agreements that governs the em-payment relationship between the FPP Participants and Tulane. Indeed, the FPP Agreement expressly references other individual and department-specific agreements. Illustrative is the yearly individual Faculty Salary Schedule and Contract Worksheet and the department agreements to modify the FPP, discussed below.
Second, the element of mutual risk sharing is lacking. The FPP Agreement guarantees FPP Participants a base salary on which certain fringe benefits like retirement are based. As noted, the FPP Agreement also has a provision allowing any of the fourteen departments to “elect to apply the FPP Agreement on a departmental full-time basis.”[7] In the event a department elects to do so, “the department, rather than the individual, assumes the financial responsibility for base salary and supplemental distribution payments to the individual faculty members within that department.”[8]
Given the absence of a joint venture or partnership relationship the Class’ analogy to Marek and Duer is factually unsupportable, the additional income that |uthe Class seeks to recover can only be viewed as a form of compensation. That conclusion is buttressed by our decision in a prior case arising out of that same FPP agreement, albeit not involving a prescription issue. Marrogi v. Gerber, 2000-1091 (La.App. 4 Cir. 5/16/01), 787 So.2d 1098, writ denied, 2001-1768 (La.9/28/01), 798 So.2d 120. In Marrogi, supra, we characterized the action of Dr. Parry’s former coworker as “basically a breach of contract *39 issue” alleging Tulane “breached the FPP agreement by not compensating [the plaintiff] in accordance with the terms of that agreement” and noted that the critical issue was “whether the defendants failed to pay [the plaintiff] what he was entitled to pursuant to that agreement.” 2000-1091 at p. 11, 787 So.2d at 1106. The crux of the case, we noted, was if the plaintiff was properly compensated for his services in accordance with the FPP agreement. The character of this class action is likewise one for additional compensation.[9]
That the Class styles this as an action seeking construction of a contract does not dictate a different result. All the actions enumerated in La. C.C. art. 3494 originate from contractual relationships. For that reason, the courts have uniformly rejected attempts to circumvent that article’s three-year prescriptive period by categorizing the entire action as sounding in breach of contract. Stams, supra (rejecting such an attempt to avoid the three-year period for actions to recover rent under La. C.C. art. 3494(2)); see also Dear v. Mobile, 93-1188 (La.App. 1 Cir. 5/20/94), 637 So.2d 745 (applying reasoning in Stams, supra, to reject argument three-year period in La. C.C. art. 3494(4) for suits on open account should not |1sapply since a contract theory was also asserted). In rejecting such attempts, the courts have cited the following reasoning set forth by the Louisiana Supreme Court in Stams:
Such a rationale, however, cannot stand, because it renders article 3494 useless. All of the actions covered by the provisions of that article essentially arise from contractual relationships. Article 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years.
538 So.2d at 278.
Citing Stams, supra, the Louisiana Supreme Court in Grabert v. Iberia Parish School Bd., 93-2715 (La.7/5/94), 638 So.2d 645 (La.1994), found unpersuasive the argument that an “action for breach of contract is distinguishable from a claim for past due wages,” reasoning:
The answer appears to be simple enough. A petition claiming breach of contract by the payment of wages less than what is due and seeking judgment for the underpaid wages is clearly a cause of action asserting the right to recover unpaid wages. Breach of contract is not a free standing cause of action. It is a legal premise, or principle, which gives rise to the right to claim some substantive remedy at law. Here that remedy is the recovery of past due wages.
93-2715, p. 2, 638 So.2d at 646. The Court further reasoned that “[t]he nature of the claim (for unpaid wages) is not something different because it arises out of breach of contract. The contract breached makes provision for the very wages sought.” 93-2715, p. 2, 638 So.2d at 647. Applying the reasoning from Starns, quoted above, the Court concluded:
Although plaintiffs urge that their claims deal exclusively with interpreting their rights under their respective employment contracts this argument is unpersuasive as virtually all claims for wages arise out of breach of a contract, oral or written, to pay wages for services |, ¿rendered. Accordingly, the employer’s failure to pay the full and proper compensation for services provided gives rise to an action for breach of *40 contract for which the remedy is recovery of wages.
93-2715 at p. 3, 638 So.2d at 647.
Tulane contends that the reasoning in Grabert is dispositive of the issue before us of whether the applicable prescriptive period in this case is La. C.C. art. 3494(1), as the trial court concluded and as Tulane contends, or La. C.C. art. 3499, as the Class contends. We agree. As in Grabeti, supra, the Class’ claim is one for additional compensation covered by La. C.C. art. 3494(l)’s three-year period.
Given our conclusion that this action is covered by the three-year period under La. C.C. art. 3494(1), the ten-year period under La. C.C. art. 3499, by its terms, does not apply. Civil Code Article 3499 provides that “[ujnless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.”[10] As the introductory clause of that Article provides, it is a “catch-all provision” that covers personal actions not specifically covered by any other prescriptive period. See La. C.C. art. 3457 (providing that “[t]here is no prescription other than that established by legislation.”) Only when the Legislature has failed to assign a specific prescriptive period to cover the specific type of personal action at issue does that Article apply. See Burns v. Schultz, 99-1997, p. 5 (La.App. 4 Cir. 2/9/00), 752 So.2d 981, 984, unit denied, 2000-0727 (La.4/28/00), 760 So.2d 1178 (citing Grabert, 'supra); 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Property § 249 (2001)(citing Grabert, supra). Civil Code Article 3494(1) is the specific prescriptive period that the Legislature |17has provided to cover the specific type of personal action at issue in this case: a claim for additional compensation.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The record reflects that all of the full-time clinical faculty at Tulane are required to participate in the FPP.

. Although at the certification hearing the issue of the span over which the class would be certified was raised and the issue of the applicable prescriptive period was addressed, no formal judgment was rendered on the prescription issue. The trial court merely remarked that La. C.C. art. 3494 "is for wages under the Civil Code, not for a specific contract” and tracked the allegation made in the petition insofar as the span of claims and claimants covered by defining the class as covering the ten-year fiscal period preceding the filing of the suit.

. The notice that was sent to the Class Members neatly enumerates a dozen defenses that *34 Tulane has asserted to the Class’ claim; particularly:
(1) that the FPP Agreement does not embody the entire employment relationship between Tulane and the faculty members; (2) that the FPP Agreement is intended to govern only income generated through the private practice of faculty members; (3) that the work that faculty members perform at Charity is part of their teaching and service responsibilities, and not part of their private practice; (4) that the money generated as a result of work performed by faculty members at Charity ("Charity Money") has never been considered "professional income” within the meaning of the FPP; (5) that faculty members were advised and agreed with Tulane that Affiliated Services Billing, a division of Tulane, would bill and collect medicaid, medicare, and certain insurance money from Charity; (7) that each faculty member agreed with Tulane that those funds collected by Affiliated Services Billing belonged to Tulane and would be paid to the respective departments of the Medical School; (8) that much of the money that Tulane receives as a result of medical services performed at Charity is used by the departments of the Medical School to fund the base salaries of faculty members and is otherwise used for the benefit of faculty members; (9) that the Charity Money reflects not only the efforts of faculty members, but also the efforts of medical residents who work with and under the supervision of faculty members; (10) that funds related to medical directorships or otherwise used for faculty salary support are properly processed as income under the FPP; (11) that FPP members have never provided billing information to the Physician’s Billing Office with respect to patients treated at Charity; and (12) that any claims in excess of three years are barred by the applicable prescriptive period (statute of limitations ). (Emphasis supplied).

. As noted, the issue of prescription was discussed at the certification hearing, but not formally decided. The issue was raised for a second time on Tulane’s exception of prescription; the trial court referred that exception to the merits. Tulane's motion for partial summary judgment was thus the third time the prescription issue was raised in the trial court. Nonetheless, Tulane’s reurging its prescription exception was procedurally proper. A peremptory exception such as prescription "may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision.” La. C.C.P. art. 928(B). Prescription may also be raised on appeal. See La. C.C.P. art. 2163. See 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.7(3)(1999)(noting that a party may reurge the plea of prescription at the close of the evidence at trial or even on appeal).

. The Class contends that the cases on which Tulane relies, which are discussed elsewhere in this opinion (Grabert, Stams, Wonycott, D'Spain, and Dear), are factually distinguishable.

. Former La. C.C. art. 3538 provided a three-year prescriptive period for actions by “attorneys for their fees and emoluments.” As noted, that same article also provided a three-year period for doctor fees, which was the prescriptive provision at issue in Marek.

. Indeed, Dr. Parry’s own department, the surgery department, elected such a modification We further note that the FPP Agreement is organized primarily on the basis of departments, which is consistent with the fact that “Tulane Medical School consists of 14 academic departments, each of which is contractually obligated to pay the salaries of its respective full-time faculty physicians.” 98-2125 atp. 1, 740 So.2d at 211.

. Although the parties also rely upon various rulings and statements made in connection with the Internal Revenue Service's classification of supplemental (formerly incentive) income under the FPP Agreement, those facts are not pertinent to the dispute before us.

. As stated earlier in this opinion, Dr. Marro-gi’s earlier filed lawsuit was what prompted Dr. Parry to commence the instant class action.

. A personal action is defined as "one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.” La. C.C.P. art. 422. This case clearly is a personal action.